MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley (Bar No. 168181)
eric.meckley@morganlewis.com
Dylan Rudolph (Bar No. 278707)
dylan.rudolph@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel: +1.415.442.1000

Jeremy P. Blumenfeld (admitted *pro hac vice*)
jeremy.blumenfeld@morganlewis.com
Brian W. Sullivan (admitted *pro hac vice*)
brian.sullivan@morganlewis.com
2222 Market Street
Philadelphia, PA 19103-3007
Tel: +1.215.963.5000

MORGAN, LEWIS & BOCKIUS LLP
Christopher J. Boran (admitted *pro hac vice*)
christopher.boran@morganlewis.com
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
Tel: +1.312.324.1000

Abbey M. Glenn (Bar No. 267751)
abbey.glenn@morganlewis.com
1111 Pennsylvania Ave, NW
Washington, DC 20004-2541
Tel: +1.202.739.3000

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| LESLIE BERLAND,<br><br>               Plaintiff,<br><br>     vs.<br><br>X. CORP., ET AL.,<br><br>               Defendants. | Case No. 3:24-cv-07589-JSC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT'S SECOND CAUSE OF ACTION**<br><br>Hearing Date: March 6, 2025<br>Time: 10:00 a.m.<br>Location: Courtroom 8<br>Hon. Jacqueline Scott Corley<br><br>Complaint Filed:  November 1, 2024 |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/ 154186909.2

MOTION TO DISMISS SECOND CAUSE OF ACTION OF COMPLAINT
CASE NO. 3:24-cv-07589-JSC

**TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

Please take notice that on March 6, 2025 at 10:00 a.m. or as soon thereafter as counsel may be heard, before the Honorable Jacqueline Scott Corley of the San Francisco Courthouse of the above-captioned court, located at 450 Golden Gate Avenue, Courtroom 8, San Francisco, CA 94102, Defendants X Corp., f/k/a Twitter, Inc., X Holdings, Elon Musk, Lindsay Chapman, Dhruv Batura, Brian Bjelde, and Twitter, Inc. Change of Control and Involuntary Termination Protection Policy (collectively, "Defendants") will, and hereby do, move this Court, pursuant to Fed. R. Civ. P. 12(b)(6), for an order dismissing the Second Cause of Action of the Complaint for Severance Benefits and Equitable Relief (ERISA), for Breach of Contract, and for Breach of the Implied Covenant of Good Faith and Fair Dealing ("Complaint") filed by Plaintiff Leslie Berland ("Plaintiff"), for failure to state a claim upon which relief can be granted. This motion is based on the following grounds:

The Second Cause of Action of the Complaint against Defendants Elon Musk, X Holdings, X Corp., Lindsay Chapman, Dhruv Batura, and Brian Bjelde under ERISA § 510, 29 U.S.C. § 1140, fails to state a claim because the only purported equitable relief Plaintiff seeks is not "equitable" or "appropriate" and is not available to her on the facts alleged in the Complaint as a matter of law. 29 U.S.C. § 1132(a)(3).

Defendants request that the Court dismiss the Second Cause of Action without leave to amend. This Motion to Dismiss is based on this Notice of Motion, the Memorandum of Points and Authorities, the pleadings on file herein, and any other written or oral materials as may be presented before the Court takes this Motion under submission.

Dated: January 7, 2025

MORGAN, LEWIS & BOCKIUS LLP

By  /s/ Christopher Boran
   Christopher Boran
   Eric Meckley
   Jeremy Blumenfeld
   Abbey Glenn
   Brian Sullivan
   Dylan Rudolph

*Attorneys for Defendants*

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/ 154186909.2

- 1 -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF COMPLAINT
CASE NO. 3:24-cv-07589-JSC

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ISSUES PRESENTED .................................................................................................... 3

III. RELEVANT BACKGROUND ....................................................................................... 3

    A. The Plan ............................................................................................................... 3

    B. Plaintiff, Her Administrative Claim and Appeal, And The Complaint ................. 4

IV. THE SECOND CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE PLAINTIFF'S REQUESTED REMEDIES ARE NOT EQUITABLE OR AVAILABLE TO HER .......................................................................................................... 6

    A. Legal Standard ..................................................................................................... 6

        1. Surcharge Is Not Available Because The Plan Is Exempt From ERISA's Fiduciary Provisions ........................................................................ 7

        2. Plaintiff's Claims For Restitution And Disgorgement Are Not Appropriate Equitable Relief ................................................................. 11

        3. The Complaint's Allegations Demonstrate That Plaintiff Cannot Recover Front Pay Or Back Pay ................................................................. 13

V. CONCLUSION .............................................................................................................. 14

Morgan, Lewis & Bockius LLP
Attorneys at Law
San Francisco

DB1/ 154186909.2

- i -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF COMPLAINT
CASE NO. 3:24-cv-07589-JSC

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abatie v. Alta Health & Life Ins. Co.*,
458 F.3d 955 (9th Cir. 2006) ........................................................................................................ 4

*Agrawal v. Musk*,
2024 WL 4654442 (N.D. Cal. Nov. 1, 2024) ............................................................................ 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................................... 6

*Bakri v. Venture Mfg. Co.*,
473 F.3d 677 (6th Cir. 2007) ...................................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................................... 6

*Bond v. Marriott Int'l, Inc.*,
637 F. App'x 726 (4th Cir. 2016) ............................................................................................... 9

*Caldwell v. Musk*,
2024 WL 4654272 (N.D. Cal. Nov. 1, 2024) ................................................................. 11, 12, 13

*Callan v. Merrill Lynch & Co.*,
2010 WL 3452371 (S.D. Cal. Aug. 30, 2010) ................................................................... 7, 9, 10

*CIGNA Corp. v. Amara*,
563 U.S. 421 (2011) .................................................................................................................... 7

*Colburn v. Hickory Springs Mfg. Co.*,
448 F. Supp. 3d 512 (E.D.N.C. 2020) ............................................................................... 7, 9, 10

*Collazo v. Infonet Servs. Corp.*,
2015 WL 13917163 (C.D. Cal. Apr. 8, 2015) ........................................................................... 10

*Demery v. Extebank Deferred Comp. Plan (B)*,
216 F.3d 283 (2d Cir. 2000) ...................................................................................................... 10

*Depot, Inc. v. Caring for Montanans, Inc.*,
915 F.3d 643 (9th Cir. 2019) .......................................................................................... 6, 11, 12

*Duggan v. Hobbs*,
99 F.3d 307 (9th Cir. 1996) .......................................................................................... 7, 8, 9, 10

*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101 (1989) .................................................................................................................... 4

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/ 154186909.2

- ii -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF
COMPLAINT
CASE NO. 3:24-cv-07589-JSC

*Gabriel v. Alaska Elec. Pension Fund*,
    773 F.3d 945 (9th Cir. 2014) ............................................................................................ 6, 7, 10, 11

*Great-W. Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002) ................................................................................................................ 12, 13

*McLeod v. Oregon Lithoprint, Inc.*,
    102 F.3d 376 (9th Cir. 1996) ........................................................................................................ 13

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993) .................................................................................................................. 6, 13

*Millsap v. McDonnell Douglas Corp.*,
    368 F.3d 1246 (10th Cir. 2004) .................................................................................................... 13

*Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*,
    577 U.S. 136 (2016) ...................................................................................................................... 11

*Pane v. RCA Corp.*,
    868 F.2d 631 (3d Cir. 1989) ........................................................................................................... 8

*Soule v. Ret. Income Plan for Salaried Emps. of Rexham Corp.*,
    723 F. Supp. 1138 (W.D. N.C. 1989) ............................................................................................. 8

*Spinelli v. Gaughan*,
    12 F.3d 853 (9th Cir. 1993) ............................................................................................................ 6

*Teutscher v. Woodson*,
    835 F.3d 936 (9th Cir. 2016) ........................................................................................................ 13

*Verizon Commc'ns Inc. v. Pizzirani*,
    462 F. Supp. 2d 648 (E.D. Pa. 2006) .............................................................................................. 8

**Statutes**

29 U.S.C. § 1101(a)(1) .................................................................................................................. 7, 8

29 U.S.C. § 1132(a)(3) ........................................................................................................... 2, 3, 6, 14

29 U.S.C. § 1132(a)(3)(B) ................................................................................................................. 6

29 U.S.C. § 1140 ................................................................................................................... 2, 3, 6, 14

ERISA § 502(a)(1)(B) ....................................................................................................................... 5

ERISA § 502(a)(3) ......................................................................................................................... 6, 12

ERISA § 510 ............................................................................................................................ *passim*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/ 154186909.2

- iii -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF
COMPLAINT
CASE NO. 3:24-cv-07589-JSC

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 3, 6, 14

- iv -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF COMPLAINT
CASE NO. 3:24-cv-07589-JSC

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/ 154186909.2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiff is a former executive of Twitter who served in the role of Chief Marketing Officer before Twitter was purchased by entities associated with Elon Musk. That purchase was memorialized in a merger agreement inked on April 25, 2022. The merger agreement contained a stand-still provision that, among other things, prohibited increases in compensation to Twitter employees except as required pursuant to existing company plans.

Despite that provision, and contrary to express instructions from the acquiring entities, Plaintiff approved sweetheart retention and spot bonuses shortly before the merger closed in October 2022, in violation of the merger agreement. A few weeks later, Plaintiff wasted hundreds of thousands of dollars by—unnecessarily and without approval—booking private jet travel to and from Twitter headquarters on October 26 and 27, 2022. Plaintiff then refused to pay for her unapproved private jet travel, resulting in Twitter being sued for such payment and incurring additional expense in the process.

Given her conduct, it should have been no surprise to Plaintiff when she was terminated for cause shortly after the Twitter acquisition closed on October 27, 2022. Nevertheless, Plaintiff tries to turn her employment termination to her advantage by claiming it entitles her to over $20 million in "Deferred Payments" under the Twitter, Inc. Change of Control and Involuntary Termination Protection Policy ("Plan"). However, while Plaintiff was one of the select group of highly-compensated Twitter executives eligible to participate in the Plan, she was categorically *ineligible* for any Deferred Payments (or other benefits) under the Plan because she was terminated for cause within the meaning of the Plan. Simply put, the Plan does not reward executives who willfully waste corporate assets by providing improper bonuses to colleagues in violation of a pending merger agreement and then spending lavishly on private jets, fully aware that these expenses will ultimately be shouldered by the company under "new management."

All of this has previously been determined through an extensive administrative process, to which the law affords substantial deference. In accordance with that process, Plaintiff submitted a claim for benefits under the Plan. Her claim was decided by an independent administrator who was

Morgan, Lewis & Bockius LLP
Attorneys At Law
San Francisco

DB1/ 154186909.2

- 1 -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF COMPLAINT
CASE NO. 3:24-cv-06266-JSC

1  conferred full discretion to interpret the Plan and decide claims for Plan benefits. The Plan
2  administrator denied Plaintiff's claims in detailed decisions, finding she was terminated "for
3  Cause" under the Plan and thus ineligible for severance benefits. As is ordinary in benefit-denial
4  cases, the central question here is whether the administrative decision was reasonable as opposed
5  to an abuse of discretion. That is what Plaintiff's First Cause of Action concerns, and while it is
6  the focus of this litigation, it is not the subject of this Motion.

Instead, this Motion concerns Plaintiff's Second Cause of Action, which claims that Defendants Elon Musk, X Holdings, X Corp., Lindsay Chapman, Dhruv Batura, and Brian Bjelde (the "Count II Defendants") terminated Plaintiff's employment for the purpose of interfering with her alleged right to severance benefits under the Plan in violation of ERISA § 510, 29 U.S.C. § 1140. For this claim, Plaintiff requests a variety of purported equitable relief: restitution, disgorgement, back pay, front pay, and/or equitable surcharge. But *none* of this is "appropriate equitable relief" under ERISA, so the Second Cause of Action should be dismissed.

First, "surcharge" is available only to remedy breaches of fiduciary duty under ERISA. But the Plan here is a top hat plan applicable to only a select group of top executives and is therefore exempt from ERISA's fiduciary provisions. This precludes any fiduciary-breach claim or any award of equitable surcharge based on a fiduciary breach.

Second, as Judge Chesney has previously held, Plaintiff's requests for restitution and disgorgement require "specifically identifiable property." But no such "property" is alleged in the Complaint or otherwise present here. To the contrary, Plaintiff seeks to recover severance benefits, paid from the company's general assets, which would constitute *legal* relief—not the sort of equitable relief that is uniquely available under 29 U.S.C. § 1132(a)(3).

Third, as Judge Chesney has also previously concluded with respect to other former Twitter executives who have filed similar section 510 claims, Plaintiff's claim to "front pay" fails because she has alleged no reasonable expectation to remaining employed at Twitter long after the acquisition and the entry of judgment in this case. Meanwhile, Plaintiff's related claim to "back pay" fails because it is not equitable relief within the meaning of ERISA, as the Supreme Court has signaled and other courts have squarely held.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/ 154186909.2

- 2 -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF COMPLAINT
CASE NO. 3:24-cv-06266-JSC

For these reasons and as discussed further below, the Court should dismiss the Complaint's Second Cause of Action for failure to state a claim under Rule 12(b)(6).

## II. ISSUES PRESENTED

1. Whether Plaintiff failed to allege a claim for equitable "surcharge" relief under 29 U.S.C. § 1132(a)(3) for an alleged violation of 29 U.S.C. § 1140 because the Plan is a "top hat" plan that is not subject to ERISA's fiduciary duties.

2. Whether Plaintiff failed to allege facts that support her claim for equitable relief under 29 U.S.C. § 1132(a)(3) for restitution and disgorgement because she has failed to identify any specifically identifiable property that is subject to this claim.

3. Whether Plaintiff has failed to allege facts that support her claim for front pay and back pay because she had no reasonable expectation to remain employed by Twitter after the acquisition and because back pay is not equitable relief under 29 U.S.C. § 1132(a)(3).

## III. RELEVANT BACKGROUND

### A. The Plan

The Plan provided specifically defined severance benefits to a "select group of key Twitter" employees who were approved by Twitter's Compensation Committee and executed participation agreements, in the "event their employment is negatively affected by a change of control at Twitter." Dkt. 1-2 at ECF Page 2 of 9. This select group was narrowly limited to members of Twitter's "Staff," the highest class of executives at Twitter. Compl. ¶ 158. Benefits paid pursuant to the Plan are deferred compensation, or "Deferred Payments," paid by the company directly, as opposed to a funded trust, no earlier than 61 days following the participant's qualifying termination. Dkt. 1-2 at ECF Page 7 of 9 ("The cost of the [Plan] is paid by the Company."); Compl. ¶ 17 ("X Corp. serves as the . . . funding source of the Plan."); Dkt. 1-2 at ECF Page 2 of 9 (Equity "awards that vest under this paragraph will be settled on the 61st day following your Qualified Termination;" Cash Severance "will be paid in cash and in full on the 61st day following your Qualified Termination."). The "Deferred Payments" provided under the Plan are made in recognition of prior service and include an amount equal to the participant's salary in the year prior to termination, and the value of restricted stock units ("RSUs") previously awarded to the participant subject to a

Morgan, Lewis & Bockius LLP
Attorneys At Law
San Francisco
DB1/ 154186909.2
- 3 -
MOTION TO DISMISS SECOND CAUSE OF ACTION OF COMPLAINT
CASE NO. 3:24-cv-06266-JSC

vesting schedule that is accelerated by the qualifying termination.  Dkt. 1-2 at ECF Page 2 of 9.

Under the terms of the Plan, these severance benefits were available to participants whose employment was ended because of an "Involuntary Termination" during a "Change of Control Period."  Dkt. 1-2 at ECF Page 2 of 9.  But participants were not eligible for benefits if their employment was terminated "for Cause."  *Id*. at ECF Page 3 of 9.  As relevant here, "Cause" includes "gross negligence or willful misconduct in the performance of [the employee's] duties[.]"  *Id*. at ECF Page 3 of 9.

The Plan expressly provides that any designated "Administrator will have full discretion to administer and interpret the [Plan]," and that "[a]ny decision made or other action taken by the Administrator with respect to the [Plan], and any interpretation by the Administrator of any term or condition of the [Plan], or any related document, will be conclusive and binding on all persons and be given the maximum possible deference allowed by law."  *Id*. at ECF Page 5 of 9.  Thus, any decision by the Administrator is subject to abuse of discretion review in this Court.  *See, e.g.*, *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 967 (9th Cir. 2006) ("We read *Firestone* to require abuse of discretion review whenever an ERISA plan grants discretion to the plan administrator[.]").

**B.   Plaintiff, Her Administrative Claim and Appeal, And The Complaint**

Plaintiff is the former Chief Marketing Officer at Twitter.  Compl. ¶ 15.  On April 25, 2022, the merger agreement whereby Musk-related entities agreed to purchase Twitter was executed.  *Id*. ¶ 48.  Later, in May 2022, Plaintiff signed an agreement to participate in the Plan.  Compl. ¶ 156; Dkt. 1-3, p. 11 of 11.

The merger was consummated on October 27, 2022.  Compl. ¶ 51.  Plaintiff was terminated for Cause as of November 1, 2022.  *Id*. ¶ 81.

On December 8, 2022, Plaintiff submitted, through counsel, a formal claim for benefits under the Plan.  Compl. ¶ 84.  The designated Plan administrator, Lindsay Chapman ("Plan Administrator"), denied the claim in a detailed letter dated June 6, 2022.  *Id*. ¶ 86.  The Plan Administrator concluded that Plaintiff was terminated for "Cause," within the meaning of the Plan, based on gross negligence or willful misconduct "by (1) violating company policy when she

Morgan, Lewis & Bockius LLP
Attorneys at Law
San Francisco
DB1/ 154186909.2
- 4 -
MOTION TO DISMISS SECOND CAUSE OF ACTION OF COMPLAINT
CASE NO. 3:24-cv-06266-JSC

traveled by charter plane to and from Twitter headquarters on October 26 and 27, 2022; (2) distributing amongst her team a $285,000 bonus pool that the company had allocated to her department; and (3) participating in alleged corporate waste." *Id.* ¶¶ 88-90.

On September 18, 2023, Plaintiff submitted an appeal, arguing that the Plan Administrator erred in concluding that she was terminated for Cause. *Id.* ¶ 99. The appeal was reviewed by the Twitter Severance Administration Committee ("Committee"). *Id.* ¶¶ 166-67. On January 16, 2024, the Committee issued a detailed opinion addressing Plaintiff's arguments and the evidence offered in support, and ultimately denying Plaintiff's appeal. *Id.*

Plaintiff then filed the Complaint asserting the following claims:

**Claim for Benefits.** In the First Cause of Action, Plaintiff asserts a claim for severance benefits under the Plan pursuant to section 502(a)(1)(B) of ERISA. Compl. ¶¶ 202-05. Through this claim, Plaintiff seeks an order declaring that the denial of her claim for benefits under the Plan was contrary to the terms of the Plan, and further ordering that she be paid severance benefits in accordance with the terms of the Plan. *Id.*, Prayer for Relief ¶¶ A-B.

**Claim for Equitable Relief.** In the Second Cause of Action, Plaintiff brings a claim under section 510 of ERISA to recover from the Count II Defendants "appropriate equitable relief" based on the decision to terminate her employment. Compl. ¶¶ 206-11.

**Breach of Contract Claim.** In the Third Cause of Action, Plaintiff alleges that Musk, X Holdings, and X Corp. breached various agreements by failing to pay Plaintiff certain equity awards. Compl. ¶¶ 212-16.

**Breach of the Implied Covenant of Good Faith and Fair Dealing.** In the Fourth Cause of Action, Plaintiff alleges that Musk, X Holdings, and X Corp. breached an implied duty of good faith and fair dealing when failing to pay certain equity awards. Compl. ¶¶ 217-20.

This Motion addresses only the Second Cause of Action, in which Plaintiff alleges that the Count II Defendants terminated her employment "to interfere[] with the attainment of any right to which such participant may become entitled under the plan" in violation of ERISA § 510. Compl. ¶ 207. Based on this theory, Plaintiff seeks purported "equitable relief," including restitution, disgorgement, back pay, front pay and/or equitable surcharge. *Id.* ¶ 211 & Prayer for Relief ¶ D.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
DB1/ 154186909.2
- 5 -
MOTION TO DISMISS SECOND CAUSE OF ACTION OF COMPLAINT
CASE NO. 3:24-cv-06266-JSC

## IV. THE SECOND CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE PLAINTIFF'S REQUESTED REMEDIES ARE NOT EQUITABLE OR AVAILABLE TO HER

### A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). ERISA section 510 makes it unlawful to terminate the employment of a plan participant for "the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan[.]" 29 U.S.C. § 1140. A terminated participant can seek "redress" for an alleged violation of section 510 through the enforcement provision prescribed in section 502(a)(3) of ERISA, which provides "appropriate equitable relief" to "redress such violations[.]" 29 U.S.C. § 1132(a)(3); *Spinelli v. Gaughan*, 12 F.3d 853, 856 (9th Cir. 1993) ("[S]ection 510 incorporates the remedies of section 502, which in turn authorizes an aggrieved participant . . . to bring a civil action . . . to obtain . . . appropriate equitable relief[.]") (citation omitted).

Claims seeking "equitable relief" that is not properly awarded under ERISA section 502(a)(3) are properly dismissed under Rule 12(b)(6). *See, e.g.*, *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 665 (9th Cir. 2019) (affirming dismissal because the "plaintiffs [were] not seeking 'appropriate equitable relief' under 29 U.S.C. § 1132(a)(3)"). An ERISA "claim fails if the plaintiff cannot establish . . . that the remedy sought is 'appropriate equitable relief' under [29 U.S.C.] § 1132(a)(3)(B), regardless of whether 'a remediable wrong has been alleged.'" *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 954 (9th Cir. 2014) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993)).

Here, Plaintiff seeks the following forms of purported equitable relief: restitution, disgorgement, back pay, front pay, and/or equitable surcharge. Compl. ¶ 211; Prayer for Relief ¶ D. Regardless of how a plaintiff characterizes the requested relief, courts must "look to the substance of the remedy sought rather than the label placed on that remedy." *Depot*, 915 F.3d at 661 (cleaned up). None of the requested forms of relief are available to Plaintiff as a matter of law, and the Second Cause of Action should be dismissed. Fed. R. Civ. P. 12(b)(6).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
DB1/ 154186909.2
- 6 -
MOTION TO DISMISS SECOND CAUSE OF ACTION OF COMPLAINT
CASE NO. 3:24-cv-06266-JSC

1.  **Surcharge Is Not Available Because The Plan Is Exempt From ERISA's Fiduciary Provisions**

Although "surcharge" is a form of equitable relief that may properly be awarded in certain ERISA cases, this is not one of them. An "equitable surcharge" is available only to remedy a breach of fiduciary duty. *CIGNA Corp. v. Amara*, 563 U.S. 421, 442 (2011) (explaining that a "surcharge" is monetary relief that might be "equitable" within the meaning of ERISA, but only when awarded to remedy "a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary"); *Gabriel*, 773 F.3d at 957-58 (same). The Plan is a top hat plan exempt from ERISA's fiduciary provisions, which precludes any fiduciary-breach claim or any award of equitable surcharge based on a fiduciary breach, as a matter of law.

ERISA expressly exempts from its fiduciary provisions plans that provide certain types of benefits to high-level employees, commonly known as "top hat" plans. *Duggan v. Hobbs*, 99 F.3d 307, 310 (9th Cir. 1996). A top hat plan is any "plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1101(a)(1). Plans that have these characteristics are exempted from ERISA's fiduciary duty (and other) provisions precisely because they "only apply to highly paid executives who are in a strong bargaining position relative to their employer and, therefore, are generally not in need of ERISA protection." *Callan v. Merrill Lynch & Co.*, 2010 WL 3452371, at *9 (S.D. Cal. Aug. 30, 2010); *Colburn v. Hickory Springs Mfg. Co.*, 448 F. Supp. 3d 512, 527 (E.D.N.C. 2020) ("Congress intended to carve out the top hat exemption because 'high-echelon employees . . . are capable of protecting their own pension interests.'"). If the Plan qualifies as a top hat plan, then Defendants "cannot be held personally liable for [] breach" of ERISA's fiduciary duties and, by extension, Plaintiffs have no entitlement to equitable surcharge. *Duggan*, 99 F.3d at 310.

Under the Plan, Plaintiff's allegations, and documents properly subject to judicial notice, the Plan qualifies as a top hat plan.

***First***, the Plan is "unfunded" and maintained by an "employer." Both the Complaint's allegations and the Plan document appended to the Complaint confirm that the cost of the Plan is

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
DB1/ 154186909.2
- 7 -
MOTION TO DISMISS SECOND CAUSE OF ACTION OF COMPLAINT
CASE NO. 3:24-cv-06266-JSC

"paid by the Company" and not separately funded.  *See* Compl. ¶ 17 ("X Corp. is the . . . funding source of the Plan."); Dkt. 1-2 at ECF Page 7 of 9 ("The cost of the [Plan] is paid by the Company.").  This is the same funding arrangement the Ninth Circuit addressed in *Duggan*, 99 F.3d at 309 (holding severance plan was unfunded because "no funds were ever set aside" and the company "drew money from its general account to pay [the] benefits under the Agreement").  And there is no dispute that X Corp. is an employer within the meaning of ERISA.

***Second***, the Plan's primary purpose and benefit is to provide generous amounts of deferred compensation—or "Deferred Payments"—to the small group of employees who are eligible to participate and experience a qualifying termination. Dkt. 1-2 at ECF Page 4 of 9.  The Ninth Circuit has held that severance benefits like those provided under the Plan constitute deferred compensation within the meaning of the top-hat exemption "because they provide compensation for services substantially after the services were rendered." *Duggan*, 99 F.3d at 311.[1]  That is the case here.  By definition, the Plan makes its "Deferred Payments" no earlier than 61 days after the participant experiences a qualifying termination—that is, long after the relevant "services were rendered." *See, e.g.,* Dkt. 1-2 at ECF Page 2 of 9 ("Your severance payment will be paid in cash and in full on the 61st day following your Qualified Termination").  Those Deferred Payments are also subject to additional deferral if necessary to avoid adverse tax consequences for the terminated participant.[2]  *Id.* at ECF Page 4 of 9 (explaining that "Deferred Payments will be delayed to the extent necessary to avoid imposition of additional tax imposed under Section 409A, which generally means that you will receive payment . . . [approximately] . . . 6 months . . . following your

---

[1] *See also id.* (citing *Pane v. RCA Corp.*, 868 F.2d 631, 637 (3d Cir. 1989) for the proposition that "compensation due under a severance agreement is a form of deferred compensation for the purposes of section 1101(a)(1)").

[2] Moreover, a substantial portion of the Deferred Payments include the accelerated payment of RSUs, performance shares, performance units, and other deferred payments for prior service. *See* Dkt. 1-2 at ECF Pages 2, 8 of 9; *see also Verizon Commc'ns Inc. v. Pizzirani*, 462 F. Supp. 2d 648, 652 (E.D. Pa. 2006) ("RSUs and PSUs are units of deferred compensation that an employee may redeem after a vesting period"); *Soule v. Ret. Income Plan for Salaried Emps. of Rexham Corp.*, 723 F. Supp. 1138, 1141–42 (W.D.N.C. 1989) ("Performance units provide for the Company to pay the employee compensation at a future date, the vesting date … The purpose of performance units, like stock options, was to reward executives for the contributions to the company's future success").

Morgan, Lewis & Bockius LLP
Attorneys At Law
San Francisco
DB1/ 154186909.2

- 8 -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF COMPLAINT
CASE NO. 3:24-cv-06266-JSC

termination of employment").

***Third***, the Plan applied only to "a select group of management or highly compensated employees" because Plaintiff and her fellow participants were richly compensated and among Twitters' highest-ranking executives. *Duggan*, 99 F.3d at 312-13. In evaluating this factor, courts typically assess the covered employees from both a quantitative and qualitative perspective. *See, e.g.*, *Bond v. Marriott Int'l, Inc.*, 637 F. App'x 726, 729 (4th Cir. 2016) ("[I]n number, the plan must cover relatively few employees. In character, the plan must cover only high level employees.") (quotation omitted); *Callan*, 2010 WL 3452371, at *10 (applying four factors examining "(1) the percentage of total workforce invited to join the plan; (2) the nature of the participants' employment duties; (3) the compensation disparity between top hat plan members and non-members; and (4) the actual language of the plan agreement") (citing *Bakri v. Venture Mfg. Co.*, 473 F.3d 677, 680 (6th Cir. 2007)).

On its face, the Plan here covered only "a *select group* of key Twitter" employees, who were approved by the Compensation Committee of Twitter's Board of Directors and executed participation agreements. Dkt. 1-2 at ECF Page 2 of 9 (emphasis added). This select group was composed of the highest class of executives at the company, including Plaintiff, the Chief Marketing Officer. Compl. ¶ 15. The Complaint concedes that Plaintiff was a member of "Staff," the highest "executive" classification at Twitter. Compl. ¶ 158; *see also*, *e.g.*, Compl. ¶¶ 12 (Plaintiff "sought and received approval from ***her*** boss at the time, CEO Agrawal"). "As high-ranking employees, they had access to information concerning their rights and obligations, so they did not need the extra protections afforded by ERISA." *Colburn*, 448 F. Supp. 3d at 527.

The Plan thus applied only to a tiny fraction of Twitter's workforce. In the months leading up to the merger, there were no more than ten members of Staff—and thus ten participants in the Plan. *See* Compl. ¶¶ 31, 56-57; *Agrawal, et al. v. Musk, et al.*, Compl. ¶¶ 10-12, No. 3:24-cv-01304-MMC, Dkt. 1 (N.D. Cal. Mar. 4, 2024); *Caldwell v. Musk, et al.*, Compl. ¶¶ 20, 24, No. 3:24-cv-02022-MMC, Dkt. 1 (N.D. Cal. Apr. 3, 2024); *Personette v. Musk, et al.*, Compl. ¶ 26, No. 3:24-cv-06266, Dkt. 1 (N.D. Cal. Sept. 5, 2024). Plan participants therefore constituted only around 0.13% of Twitter's workforce of "over 7,500 full-time employees." *See* Declaration of Abbey

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/ 154186909.2

- 9 -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF COMPLAINT
CASE NO. 3:24-cv-06266-JSC

Glenn ("Glenn Decl."), Ex. 1 (Twitter 2022 Form 10-K) at 16/156.  This is a far more "select group" than other courts have deemed sufficient to satisfy ERISA's top-hat exemption. *See, e.g., Duggan*, 99 F.3d at 312 (holding severance agreement that applied to less than 5% of the workforce was a top hat plan); *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 289-90 (2d Cir. 2000) (holding that deferred compensation plan that was limited to just 15.34% of workforce constituted a top hat plan).

Plaintiff and her fellow participants were also highly compensated, by any measure.  For example, Plaintiff claims the Plan entitled her to a Deferred Payment that included her one-year salary of $600,000 (Compl. ¶ 204), which alone is more than 260% of the median amount earned by all Twitter employees ($232,626), even before accounting for the roughly $19,000,000 in Plaintiff's RSUs or other deferred compensation included in the Deferred Payment amount.  Glenn Decl., Ex. 2 (Twitter May 25, 2022 Proxy Statement) at 74/89; Compl. ¶ 204 (alleging that Plaintiff is entitled to "an amount exceeding $20,000,000" that is based on one-year's salary of $600,000 plus 50% of the cash value of Plaintiff's unvested RSUs and other deferred compensation).  Other Plan participants earned a great deal more. *Id*. at 73/89 (identifying the total compensation in 2021 earned by three other Plan participants: *e.g*., Agrawal earned $30,351,152, Segal earned $18,907,232, and Gadde earned $16,957,785).  Thus, there is no question that Plan participants were "highly compensated" within the meaning of the top hat exemption. *See, e.g., Colburn*, 448 F. Supp. 3d at 527 (plan participants whose "salaries were more than twice the average salary of the employees who did not participate" in the plan were highly compensated); *Callan*, 2010 WL 3452371, at *11 ("courts have found that a 2:1 disparity is sufficient to satisfy this prong of the test") (collecting cases).

In short, under the Plan, Plaintiff's allegations, and judicially noticeable documents, the Plan qualifies as a top hat plan that is exempt from ERISA's fiduciary provisions. *See Collazo v. Infonet Servs. Corp.*, 2015 WL 13917163, at *5 (C.D. Cal. Apr. 8, 2015) ("[A]ccepting all of Plaintiffs' alleged facts as true, there is no dispute that the Retirement Plan meets the definition of a top hat ERISA plan."); *Duggan*, 99 F.3d at 310.  Plaintiff's request for surcharge, which is available only for a breach of fiduciary duty, must be dismissed.

Morgan, Lewis & Bockius LLP
Attorneys at Law
San Francisco
DB1/ 154186909.2

- 10 -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF COMPLAINT
CASE NO. 3:24-cv-06266-JSC

### 2. Plaintiff's Claims For Restitution And Disgorgement Are Not Appropriate Equitable Relief

Despite Plaintiff's label, "not all relief falling under the rubric of restitution is available in equity." *Gabriel*, 773 F.3d at 954 (citation omitted). Restitution in equity is available only "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 954-55; *see also Depot*, 915 F.3d at 663; *Caldwell v. Musk*, 2024 WL 4654272, at *3 (N.D. Cal. Nov. 1, 2024). By contrast, restitution at law is where the plaintiff "cannot assert title or right to possession of particular property" and instead seeks to recover "money to pay for some benefit the defendant received from the plaintiff." *Depot*, 915 F.3d at 661 (citation omitted). In other words, where, as here, a plaintiff seeks recovery out of the defendant's general assets, the plaintiff is seeking legal restitution—not *equitable* restitution. *Id.*; *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 145 (2016) (recovery from a defendant's general assets "is a *legal* remedy, not an equitable one."); *Caldwell*, 2024 WL 4654272, at *4 n.3 ("[A]s Caldwell does not allege the value of vested shares he seeks ever 'existed as a distinct object or fund,' a judgment awarding him the value of the vested shares 'would have no connection to any particular fund,' i.e., it would be 'restitution at law, not equity'") (quoting *Depot*, 915 F.3d at 662).

In *Depot*, the Ninth Circuit affirmed dismissal of a claim relating to health insurance premium surcharges because the plaintiffs' request for restitution was legal in nature. 915 F.3d at 662. While the plaintiffs sought to recover amounts equal to the premium surcharges they had paid on the theory that the surcharges constituted unreasonable compensation under ERISA, the surcharges "never existed as a distinct object or fund" but rather reflected a "specific amount of money encompassed within a particular fund." *Id.* (citation omitted). Consequently, the Ninth Circuit held that the plaintiffs had failed to allege a specific, identifiable fund to which they were entitled, as required for equitable restitution. *Id.*

The same is true here, as Judge Chesney concluded in *Caldwell*. The Complaint alleges that Plaintiff brings this action "for interference with her rights to her severance benefits in violation of ERISA Section 510." Compl. ¶ 13, Prayer for Relief ¶¶ A-B. But, like the complaint in

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/ 154186909.2

- 11 -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF COMPLAINT
CASE NO. 3:24-cv-06266-JSC

1   *Caldwell*, the Complaint here does not allege that Plan benefits are "specifically identifiable funds"
2   in the Count II Defendants' possession to which Plaintiff is entitled. *See Depot*, 915 F.3d at 661-
3   62; *Caldwell*, 2024 WL 4654272, at *4; *see also Montanile*, 577 U.S. at 145 ("Equitable remedies
4   are, as a general rule, directed against some specific thing; they give or enforce a right to or over
5   some particular thing ... rather than a right to recover a sum of money generally out of the
6   defendant's assets.") (internal quotations and citation omitted). Indeed, the Plan makes clear that
7   severance benefits are paid from company assets. Compl. ¶ 17 ("X Corp. is the . . . funding source
8   of the Plan."); Dkt. 1-2 at ECF Page 7 of 9 ("The cost of the [Plan] is paid by the Company.");
9   *Caldwell*, 2024 WL 4654272, at *4. Thus, as in *Depot* and *Caldwell*, if Plaintiff were to prevail on
10  her ERISA § 510 claim, any recovery of Plan benefits would necessarily be paid by X Corp. from
11  its general assets. And because such recovery would constitute *legal* restitution, it is simply not
12  available under section 502(a)(3). *Depot*, 915 F.3d at 662; *Caldwell*, 2024 WL 4654272, at *4.

13  Plaintiff's request for disgorgement fails for the same reason. Disgorgement is simply a
14  form of restitution "measured by the defendant's wrongful gain rather than by the plaintiff's loss."
15  *Depot*, 915 F.3d at 663 (internal quotations and citation omitted). But like restitution, equitable
16  disgorgement is only "available when the plaintiff is entitled to a constructive trust on *particular*
17  *property* held by the defendant that allows the plaintiff to recover profits produced by the
18  defendant's use of *that property*." *Id.* (quoting *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534
19  U.S. 204, 214 n.2 (2002)) (internal quotations omitted; emphases added); *Caldwell*, 2024 WL
20  4654272, at *4 (disgorgement "requires a showing that the defendant possesses 'specific property
21  from which proceeds or profits derived'") (quoting *Depot*, 915 F.3d at 664-65). Here again, the
22  Complaint does not allege any "particular property" held by the Count II Defendants. "Given the
23  absence of any particular property in this case, [Plaintiffs'] request for disgorgement is not equitable
24  in nature," and should therefore be dismissed. *Depot*, 915 F.3d at 664; *see also Caldwell*, 2024
25  WL 4654272, at *4 (dismissing request for disgorgement where plaintiff did "not allege the vested
26  shares he seeks to recover are held by X, or by Musk").

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

DB1/ 154186909.2

- 12 -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF
COMPLAINT
CASE NO. 3:24-cv-06266-JSC

### 3. The Complaint's Allegations Demonstrate That Plaintiff Cannot Recover Front Pay Or Back Pay

Plaintiff's request for front pay likewise falls short. Even assuming that front pay may constitute "appropriate equitable relief" under section 502(a)(3) in certain cases, Plaintiff's own allegations confirm this is not one of them. Front pay is a forward-looking remedy, measured by the amount the plaintiff was "reasonably certain" to earn through continued employment with the employer beyond the trial date, "but for [her] wrongful discharge" (minus earnings she could have obtained through alternative employment). *Teutscher v. Woodson*, 835 F.3d 936, 948 (9th Cir. 2016). "To establish entitlement to front pay, a plaintiff must show 'the salary [she] was reasonably certain to have earned but for his wrongful discharge [and] the period over which [s]he would have earned that salary.'" *Caldwell*, 2024 WL 4654272, at *4 (quoting *Teutscher*, 835 F.3d at 948).

But here, Plaintiff has not plausibly alleged any expectation of remaining employed at Twitter following the October 2022 acquisition—let alone for years into the future and beyond any trial and judgment in this case. If anything, Plaintiff alleges that her employment at Twitter post-acquisition was in doubt, given that other executives were terminated, as is common following any public-to-private corporate acquisition. Compl. ¶ 56. Thus, Plaintiffs' own allegations refute any suggestion that she could be entitled to front pay for her section 510 claim. *Caldwell*, 2024 WL 4654272, at *4 (concluding plaintiff failed to plead entitlement to front pay because he did not allege "that had he not been terminated by Musk, he would have continued to work for X for any significant period of time thereafter, . . . a threshold showing he must make."); *Agrawal v. Musk*, 2024 WL 4654442, at *4 (N.D. Cal. Nov. 1, 2024) (same).

Nor can Plaintiff recover "back pay" because it is simply not equitable relief under ERISA. Dkt. 1, Prayer for Relief, ¶ D. Back pay is a form of compensatory damages that cover the period before the entry of judgment. *See Teutscher*, 835 F.3d at 946 ("[c]ompensatory damages under California law thus may include as 'backpay' an award of 'lost-wages damages through the time of trial'"). Equitable relief under ERISA cannot include compensatory damages. *See id.* ("ERISA section 510 does not provide compensatory damages"); *McLeod v. Oregon Lithoprint, Inc.*, 102 F.3d 376, 378 (9th Cir. 1996); *Mertens*, 508 U.S. at 255–56. Although the Ninth Circuit has not

Morgan, Lewis & Bockius LLP
Attorneys at Law
San Francisco
DB1/ 154186909.2
- 13 -
MOTION TO DISMISS SECOND CAUSE OF ACTION OF COMPLAINT
CASE NO. 3:24-cv-06266-JSC

1  directly addressed whether back pay is available as equitable relief in the context of a claim under
2  ERISA § 510, the Tenth Circuit has concluded that back pay is not available. *See Millsap v.*
3  *McDonnell Douglas Corp.*, 368 F.3d 1246, 1260 (10th Cir. 2004). Citing the Supreme Court's
4  decision in *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 218, n. 4 (2002), the Tenth
5  Circuit held that the "Plaintiffs' freestanding claim for backpay-legal relief-is accordingly
6  precluded by § 502(a)(3)'s plain terms." *Id.* The same result is appropriate here.

## V. CONCLUSION

The Court should dismiss Plaintiff's claim brought pursuant to 29 U.S.C. §§ 1132(a)(3) and 1140, the Complaint's Second Cause of Action, pursuant to Rule 12(b)(6).

Dated: January 7, 2025                              Respectfully submitted,

                                                    MORGAN, LEWIS & BOCKIUS LLP

                                                    By  */s/ Christopher Boran*
                                                        Eric Meckley
                                                        Jeremy Blumenfeld (admitted *pro hac vice*)
                                                        Christopher Boran (admitted *pro hac vice*)
                                                        Abbey Glenn
                                                        Brian Sullivan (admitted *pro hac vice*)
                                                        Dylan Rudolph

                                                    *Attorneys for Defendants*

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
DB1/ 154186909.2
- 14 -
MOTION TO DISMISS SECOND CAUSE OF ACTION OF COMPLAINT
CASE NO. 3:24-cv-06266-JSC