UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE BERLAND,<br><br>    Plaintiff,<br><br>v.<br><br>X CORP., SUCCESSOR IN INTEREST TO TWITTER, INC., et al.,<br><br>    Defendants. | Case No. 24-cv-07589-JSC<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND CAUSE OF ACTION**<br><br>Re: Dkt. No. 29 |

Leslie Berland seeks to recover employment benefits she alleges Defendants withheld after Elon Musk acquired Twitter in 2022. (Dkt. No. 26.)[1] Before the Court is Defendants' motion to dismiss her second cause of action under ERISA § 510. (Dkt. No. 29.) After carefully considering the parties' written submissions, and having had the benefit of oral argument on April 24, 2025, the Court DENIES Defendants' motion because Ms. Berland has plausibly pled entitlement to injunctive relief and thus an ERISA § 510 claim.

**BACKGROUND**

**I.    Complaint Allegations**

Ms. Berland "was Twitter's[2] Chief Marketing Officer ["CMO"] from February 2016 through November 1, 2022." (Dkt. No. 26 ¶ 15.) From August 2017 through May 2021, she was also "Head of People." (*Id.*) Ms. Berland, like other executives at the company, was a participant in "the Change of Control Severance and Involuntary Termination Protection Policy [the 'Plan']." (*Id.* ¶ 7.) The "Plan was an employee welfare benefit plan within the meaning of ERISA § 3(1)

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[2] Defendant X Corp. is "the successor to Twitter, Inc.," and in the present Order all references to "Twitter" refer to the company later renamed "X." (Dkt. No. 17.)

(29 U.S.C. § 1002(1)) sponsored by Twitter." (*Id.* ¶ 26.) "[T]he Plan offered benefits to certain employees of Twitter, including Ms. Berland." (*Id.*)

"Twitter adopted the Plan 'to provide certain protections to a select group of key Twitter, Inc. … employees if their employment is negatively affected by a change on control of Twitter." (*Id.* ¶ 32.) To be eligible for benefits under the Plan, among other things, the participant's employment must have "ended as a result of an 'Involuntary Termination.'" (*Id.* ¶ 34.) An Involuntary Termination is "a termination of employment by the Company other than for Cause, death or Disability or a termination of employment by [the employee] for Good Reason.'" (*Id.* ¶ 38.) "During the course of her employment at Twitter, Ms. Berland never received any material negative feedback, was never advised she had failed to follow company policies or rules, and was never advised that she had engaged in gross negligence, willful misconduct, or any other conduct that could even arguably constitute 'Cause' under the Plan." (*Id.* ¶ 16.)

Defendants Elon Musk and X Holdings "agreed to buy Twitter for $54.20 per share in cash," in April of 2022. (*Id.* ¶ 48.) "The merger transaction closed on October 27, 2022." (*Id.* ¶ 51.) "At times relevant to this Complaint, Musk also was the CEO of Twitter and X Corp. and a fiduciary of the Plan." (*Id.*) "In the days leading up to the closing [of the sale] on October 27, 2022, Musk was aware that several executives would be entitled to payments under the Plan and another ERISA-governed plan that required change-of-control severance, totaling approximately $200 million." (*Id.* ¶ 52.) And Mr. Musk "put into action a scheme to unlawfully deprive those executives of their employment benefits owed under the Plan." (*Id.* ¶ 53.) "[M]inutes after he acquired Twitter, Musk fired several Twitter executives." (*Id.* ¶ 56.)

However, "[l]eading up to, during, and throughout the days following the closing, Ms. Berland was Musk's primary contact with Twitter, the only Twitter executive with whom Musk was communicating, and the only Twitter executive team member Musk or his team asked for assistance during the ownership transition." (*Id.* ¶ 58.) "Ms. Berland communicated directly and extensively with Musk" and the two "worked well together." (*Id.* ¶¶ 59, 64.) As part of her work, Ms. Berland introduced Mr. Musk to the Company's Head of Global Sales, Mr. Maheu. (*Id.* ¶¶ 71-74.) In a corporate meeting soon after he was introduced by Ms. Berland, Mr. Maheu

2

"questioned" one of Mr. Musk's decisions. (*Id.* ¶ 76.) Mr. Musk "blamed Ms. Berland for Maheu's comment," texting her that he was a bad recommendation. (*Id.*) On November 1, 2022, hours after receiving this text, "Ms. Berland was fired from Twitter." (*Id.* ¶ 77.) "Other than the purported 'Bad recommendation,' neither Musk nor anyone else at the company identified any reasons or cause for the termination, nor was Ms. Berland told that her termination was 'for Cause' under the Plan." (*Id.*)

Ms. Berland's health insurance was subsequently "shut off," so she reached out to Mr. Musk's attorney, who reassured her that he would handle it. (*Id.* ¶ 79.) But on November 27, 2022, "Musk notified Ms. Berland that she had purportedly been terminated 'for Cause.'" (*Id.* ¶ 81.) In the notification letter, Mr. Musk "only generally alleged that Ms. Berland had failed to comply with the[*sic*] Twitter's 'written policies' and engaged in 'gross negligence or willful misconduct.'" (*Id.* ¶ 82.) On December 8, Ms. Berland submitted a claim with the Plan Administrator who told her she was properly terminated for Cause and therefore "did not have an Involuntary Termination," so she was not entitled to "accelerated vesting of unvested equity." (*Id.* ¶¶ 84-90.) Additionally, "Ms. Berland has not been provided the relevant documents she requested," which were documents the Administrator used in making her determination. (*Id.* ¶ 98.) In September 2023, "Ms. Berland appealed the denial of her Claim." (*Id.* ¶ 99.) But despite attaching evidence and addressing the Administrator's determination of policy violations (*see generally id.* ¶¶ 100-165), she was notified "the Committee had denied her appeal." (*Id.* ¶ 166.)

"Defendants' characterization of Ms. Berland's termination as being 'for Cause' was for the purpose of interfering with her attainment of rights and benefits under the Plan." (*Id.* ¶ 177.)

**II.   Procedural Background**

Ms. Berland alleges four causes of action: (1) for Plan benefits pursuant to ERISA § 502(a)(1)(B); (2) unlawful discharge to interfere with right to Plan benefits pursuant to ERISA § 510; (3) breach of contract; and (4) breach of the implied covenant of good faith and fair dealing. Ms. Berland seeks equitable relief, "including front pay and back pay, disgorgement of profits, surcharge, and restitution." (*Id.* ¶ 211.)

Defendants now move to dismiss the second cause of action for failure to state a claim on

3

1 the grounds that Ms. Berland fails to plausibly plead she is entitled to equitable relief as required
2 for an ERISA § 510 claim. (Dkt. No. 29.)

## ANALYSIS

### I.     Judicial Notice & Incorporation by Reference

Generally, a district court cannot "consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). However, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). First, a court may take judicial notice of facts "not subject to reasonable dispute" because they are "generally known within the court's territorial jurisdiction" or can be "accurately determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). This includes "undisputed matters of public record." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012). Second, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). "Although mere mention of the existence of a document is insufficient to incorporate the contents of a document, the document is incorporated when its contents are described and the document is integral to the complaint." *Tunac v. United States*, 897 F.3d 1197, 1207 n.8 (9th Cir. 2018) (cleaned up).

The parties ask the Court to consider five documents outside of the complaint. Defendants request the Court take judicial notice of two Twitter filings with the Securities and Exchange Commission ("SEC"). (*See* Dkt. Nos. 30-2 (2021 Form 10-K); 30-3 (2022 Definitive Proxy Statement).) Ms. Berland seeks to incorporate by reference a June 6, 2023 letter from Twitter (Dkt. No. 41-2), and seeks judicial notice of her attorney's search results from the website https://www.askebsa.dol.gov/tophatplansearch. (Dkt. No. 41-1 ¶ 3.) And both parties cite to the Plan attached to Ms. Berland's complaint. (Dkt. No. 26-2.) Neither party opposes the Court's

1   consideration of any of the above materials.

2         As to the Plan, in reviewing a motion to dismiss, courts may consider documents attached
3   to the complaint, and the Plan was attached to the Complaint. *Parks Sch. of Bus., Inc. v.
4   Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). So, the Court considers the Plan in ruling on this
5   motion. *United States v. Corinthian Colls.*, 655 F.3d 984, 998-99 (9th Cir. 2011).

6         Defendants' SEC filings are proper subjects of judicial notice. *Dreiling v. Am. Exp. Co.*,
7   458 F.3d 942, 946 n.2 (9th Cir. 2006) (holding the court may consider "any matter subject to
8   judicial notice, such as SEC filings.") Next, as to the DOL website, federal regulation provides an
9   alternative method for satisfying the filing obligation for ERISA pension plans. 29 C.F.R. §
10  2520.104-23(b). The regulation specifically permits administrators of "certain pension plans for a
11  select group of management or highly compensated employees," to file a statement with the
12  Secretary of Labor. *Id.* Pursuant to this regulation, the DOL maintains a website to publicly
13  compile these so-called "Top Hat Statements." Ms. Berland seeks to judicially notice that on
14  February 4, 2025, her counsel searched the database and was unable to locate a Top Hat Statement
15  under Twitter's EIN or the Plan name. (Dkt. No. 41-1 ¶ 3.) "Courts in this circuit routinely take
16  judicial notice of material contained [in] government agency websites." *Santos v. Minnesota Life
17  Ins. Co.*, 571 F. Supp. 3d 1120, 1126 (N.D. Cal. 2021) (citing *Daniels-Hall v. Nat'l Educ. Ass'n*,
18  629 F.3d 992, 998-99 (9th Cir. 2010)). And here, Defendants do not dispute that they did not file
19  a Top Hat Statement with the DOL. (Dkt. No. 43 at 14 n.7.) Accordingly, the Court also takes
20  judicial notice that the DOL website does not reflect Twitter filed a Top Hat Statement with the
21  DOL.

22        Finally, the Complaint cites and quotes from the letter Ms. Berland seeks to incorporate by
23  reference. (*See* Dkt. No. 26 ¶¶ 11, 86-90, 140.) And Defendants also do not contest the propriety
24  of incorporating this document by reference. The letter forms part of the basis for her claims
25  because it is the original denial of claim under the Plan. (*Id.*) Because the letter's "contents are
26  described and the document is integral to the complaint," the Court considers the letter as
27  incorporated by reference in the Complaint. *Tunac*, 897 F.3d at 1207 n.8 (cleaned up).

28

**II.     Whether Equitable Relief is not Recoverable as a Matter of Law**

ERISA § 510 makes it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140. A § 510 violation is remediable by § 502, "which in turn authorizes an aggrieved participant or beneficiary to bring a civil action '(A) to enjoin any [violative] act or practice ..., or (B) to obtain other appropriate equitable relief....'" *Spinelli v. Gaughan*, 12 F.3d 853, 856 (9th Cir. 1993) (quoting 29 U.S.C. § 1132(a)(3)). So, to state a claim under ERISA § 510, "the nature of the underlying remedies sought must be equitable rather than legal." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 660 (9th Cir. 2019) (cleaned up).

Defendants argue Ms. Berland fails to state an ERISA § 510 claim because her complaint does not plausibly establish a right to any equitable relief. Defendants do not move on any other ground. So, if the Complaint, when drawing all reasonable inferences in Ms. Berland's favor, plausibly pleads entitlement to at least one form of equitable relief, her claim survives. *See Caldwell v. Musk*, No. 24-cv-02022-MMC, 2024 WL 4654272, at *5-6 (N.D. Cal. Nov. 1, 2024); *Agrawal v. Musk*, No. 24-cv-01304-MMC, 2024 WL 4654442, at *5 n.7 (N.D. Cal. Nov. 1, 2024).

**A. Whether Surcharge is Available**

Surcharge remedies "a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary." *CIGNA, Corp. v. Amara*, 563 U.S. 421, 442 (2011) (citations omitted). "Where an ERISA fiduciary has breached a fiduciary duty, he can be required to 'return' to the beneficiary any 'benefit' the fiduciary gains by the breach or, alternatively, to pay 'damages' to the beneficiary for 'actual harm,' i.e., the amount necessary to 'put the beneficiary in the position he or she would have attained but for the trustee's breach.'" *Caldwell*, 2024 WL 4654272, at *5 (quoting *Skinner v. Northrop Grumman Ret. Plan*, 673 F.3d 1162, 1167 (9th Cir. 2012)). But surcharge is not an available remedy for "top hat" ERISA plans because top hat plans are "exempt from the fiduciary duties ERISA imposes on plan administrators." *Duggan v. Hobbs*, 99 F.3d 307, 310 (9th Cir. 1996). A top hat ERISA plan is defined by three characteristics: (1) it is "unfunded"; (2) it "is maintained by an employer

6

primarily for the purpose of providing deferred compensation"; and (3) it is maintained "for a select group of management or highly compensated employees." 29 U.S.C. § 1051(2). So, if drawing all reasonable inferences from Ms. Berland's allegations in her favor the Plan is a top hat plan, Ms. Berland cannot recover surcharge.

First, the Plan, by its terms, is unfunded. (Dkt. No. 26-2 at 7 ("The cost of the Policy is paid by the Company."); *see also Kurisu v. Svenhard Swedish Bakery Supplemental Key Management Ret. Plan*, No. 20-cv-06409-EMC, 2021 WL 3271252 at *8 (N.D. Cal. July 30, 2021) (holding "where there is a top hat plan, there is no fund").) Furthermore, the Plan is maintained for a select group of highly compensated employees—participants "must have been designated as eligible by the Compensation Committee of the Board" and "have executed a Participation Agreement." (Dkt. No. 26-2 at 2.) Indeed, Ms. Berland does not contest either that the Plan is unfunded or that it is maintained for a select group of highly compensated employees. (Dkt. No. 41 at 25.) Instead, the parties dispute whether the Plan was maintained "primarily for the purpose of providing deferred compensation." 29 U.S.C. § 1051(2).

### 1. Top Hat Plans are not Limited to Pension Plans

As a preliminary matter, Ms. Berland's insistence that only pension plans—not severance plans—can qualify as top hat plans is unpersuasive. The statute does not make this distinction, as the provision's plain language applies to "a plan," not only a *pension* plan. 29 U.S.C. § 1051(2). And the Ninth Circuit has applied the top hat definition to a severance plan without first holding the plan was actually a pension plan. *See Duggan*, 99 F.3d at 310-14; *see also Carr v. First Nationwide Bank*, 816 F. Supp. 1476, 1488 (N.D. Cal. 1993) ("Top hat plans which provide for deferred compensation to be repaid after retirement or termination of employment, such as the [defendant's], resemble 'employee pension benefit plan[s],' … [h]owever, Top Hat plans are also unlike pension benefit plans in the sense that their purpose need not be to provide pension benefits and they need not necessarily result 'in a deferral of income … for periods extending to the termination of covered employment or beyond,' as would pension benefit plans.") (quoting 29 U.S.C. § 1002(2)).

//

**2. The Plan is not a Top Hat Plan as a Matter of Law**

Even so, Defendants have not established the Plan was maintained "primarily for the purpose of providing deferred compensation" as a matter of law. 29 U.S.C. § 1051(2). In *Duggan*, the Ninth Circuit for the first time addressed "the scope of 'deferred compensation' under the top-hat exception of section 1101(a)(1)." 99 F.3d at 310. Reviewing a judgment issued following a bench trial, the court considered whether a severance agreement qualified as a top hat plan. *Id.* Under the agreement, the plaintiff agreed to retire two days later in return for payments of "$1,056.88 per month for life in retirement benefits and up to $300 per month for life in health insurance benefits." *Id.* at 309. The payments were made in consideration for the plaintiff's

> (1) years of loyal service, (2) waiver of all claims to any commissions and bonuses he was entitled to receive under previous agreements with [employer], (3) waiver of all causes of action against [employer], and (4) agreement not to compete with employer in specified locations.

*Id.* The Ninth Circuit held the trial record showed

> [t]he payments due to [the plaintiff] under the Agreement are deferred compensation because they provide compensation for services substantially after the services were rendered. According to the Agreement, the severance payments were partially "in consideration for [the plaintiff's] years of dedicated service [and] loyalty to the company." [Employer] was providing the plaintiff deferred compensation (monthly payments for life) for his past services and loyalty.

*Id.* at 311.

Here, neither the Plan nor the Complaint mandate a finding the payments required by the Plan were "in consideration for [the plaintiff's] years of dedicated service [and] loyalty to the company." To the contrary, the Plan, provides its purpose is "to assure that the Company will have the continued dedication and objectivity of the participants in the Policy." (Dkt. No. 1-2 at 8.) Further, the Plan does not call for monthly payments for life, or monthly payments at all; instead, it provides for a lump sum payment of cash and immediate vesting of certain shares on the 61st day following the employee's termination. (*Id.* at 2; Dkt. No. 41-2 at 4-5; Dkt. No. 26 ¶ 46.)

Indeed, immediately after the above-quoted paragraph in *Duggan* concluding the employer was providing the plaintiff with deferred compensation in the form of monthly payments for life,

8

the *Duggan* court explained: "[the plaintiff] could have sought a lump sum payment in exchange for his waiver of all claims and his retirement, but instead he agreed to accept deferred payments and receive them incrementally over his lifetime." 99 F.3d at 311. In other words, the *Duggan* court held a lump sum payment would not be considered deferred compensation, at least on the record before it. Defendants offer no other interpretation of the court's holding, let alone a reasonable alternative conclusion. *See also Kramer v. Am. Elec. Power Exec. Severance Plan*, 128 F.4th 739, 746-48 (6th Cir. 2025) (holding plan was primarily for deferred compensation when the first payment was made six months after termination in a schedule of 13 bi-weekly installments). So, the Court cannot find at this pre-discovery stage that the Plan is a top hat plan.

Additional reasons support the Court's conclusion. First, the Plan itself states "[t]he Administrator is the 'named fiduciary' of the Policy for the purposes of ERISA and will be subject to the fiduciary standards of ERISA when acting in such capacity." (Dkt. No. 1-2 at 5.) Drawing reasonable inferences in Plaintiff's favor, this statement supports an inference Defendants did not consider the Plan to be a top hat plan since it is governed by ERISA fiduciary standards. And, the judicially noticeable fact that Twitter did not file a legally-required Top Hat Statement with the DOL supports an inference the Company did not believe the Plan was a top hat plan and so did not maintain the Plan "primarily for the purpose of providing deferred compensation." (Dkt. No. 41-1 ¶ 3.) Defendants' motion asks the Court to ignore these inferences.

Defendants argue the "Section 409A" Plan provision necessarily requires payments be made in a manner to avoid tax consequences by deferring compensation to a different taxable year. (Dkt. No. 26-2 at 4.) But drawing reasonable inferences in Plaintiff's favor, the provision merely provides the Company will pay benefits in a Section 409A-compliant manner and does not mandate deferral of compensation for an entire taxable year. And Defendants' argument that the mere presence of the 409A provision means the Plan's primary purpose is to defer compensation improperly draws inferences in Defendants' favor. *See Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) ("A court must 'draw all reasonable inferences in favor of the nonmoving party.'") (quoting *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)).

1    Because drawing all reasonable inferences in Ms. Berland's favor, the Plan is not a top hat
2 plan, and Defendant does not challenge the availability of the surcharge remedy on any other
3 grounds, the Complaint pleads the availability of a surcharge remedy.  Having thus concluded Ms.
4 Berland has pled the availability of at least one equitable remedy, she states an ERISA § 510
5 claim.  So, the Court DENIES Defendants' motion to dismiss without determining whether Ms.
6 Berland also plausibly pleads other equitable remedies.

## CONCLUSION

Defendants have not met their burden of showing as a matter of undisputed fact the Plan is a top hat plan not subject to ERISA's fiduciary duty requirements, so at least one equitable remedy—surcharge—is plausibly pled.  Therefore, their motion to dismiss Ms. Berland's second cause of action under ERISA § 510 is DENIED.  The parties are further ORDERED to appear for a further case management conference on July 9, at 2:00 p.m. via Zoom video with a joint case management statement due one week in advance.

This Order disposes of Docket No. 29.

**IT IS SO ORDERED.**

Dated: April 28, 2025

JACQUELINE SCOTT CORLEY
United States District Judge