MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley (Bar No. 168181)
eric.meckley@morganlewis.com
Dylan Rudolph (Bar No. 278707)
dylan.rudolph@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel: +1.415.442.1000

Jeremy P. Blumenfeld (admitted *pro hac vice*)
jeremy.blumenfeld@morganlewis.com
Brian W. Sullivan (admitted *pro hac vice*)
brian.sullivan@morganlewis.com
2222 Market Street
Philadelphia, PA 19103-3007
Tel: +1.215.963.5000

MORGAN, LEWIS & BOCKIUS LLP
Christopher J. Boran (admitted *pro hac vice*)
christopher.boran@morganlewis.com
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
Tel: +1.312.324.1000

Abbey M. Glenn (Bar No. 267751)
abbey.glenn@morganlewis.com
1111 Pennsylvania Ave, NW
Washington, DC 20004-2541
Tel: +1.202.739.3000

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### (SAN FRANCISCO DIVISION)

| | |
|---|---|
| LESLIE BERLAND,<br><br>            Plaintiff,<br><br>     vs.<br><br>X CORP., et al.,<br><br>            Defendants. | Case No. 3:24-cv-7589-JCS<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S THIRD AND FOURTH CAUSES OF ACTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:  June 26, 2025<br>Time: 10:00 a.m.<br>Div.:  Courtroom 8, 19th Floor<br>Judge: Hon. Jacqueline Scott Corley |

**TO PLAINTIFF AND HER ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on June 26, 2025 at 10:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 8 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants X Corp. (fka Twitter, Inc.), X Holdings, Elon Musk, Lindsay Chapman, Dhruv Batura, Brian Bjelde, and the Twitter, Inc. Change of Control and Involuntary Termination Protection Policy (collectively, "Defendants") will, and hereby do, move this Court for an order compelling arbitration of the Third and Fourth Causes of Action asserted by Plaintiff Leslie Berland ("Plaintiff") in her Compliant (Dkt. 1) and staying this lawsuit as it pertains to Plaintiff's Third and Fourth Causes of Action pending the outcome of that arbitration. *See* 9 U.S.C. §§ 1 *et seq.*; *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018).

Defendants bring this Motion on the grounds that Plaintiff and X Corp.'s predecessor, Twitter, Inc. ("Twitter"), entered into a binding Dispute Resolution Agreement ("Agreement") to arbitrate all disputes arising out of Plaintiff's employment with Twitter, including, but not limited to, disputes involving Plaintiff's compensation. Plaintiff's Third and Fourth Causes of Action involve equity compensation that Plaintiff claims she is owed by X Corp., and, therefore, fall within the scope of the Agreement. The Agreement is valid, binding, and legally enforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.* and the California Arbitration Act ("CAA"), Cal. Civ. Proc. Code §§ 1280 *et seq*. Plaintiff must be compelled to arbitrate her Third and Fourth Causes of Action, and the Court should stay the action as to those claims pending the completion of arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *Scherk v. Alberto Culver Co.*, 417 U.S. 506, 511 (1974); *see also* Cal. Civ. Proc. Code § 1281.2.

This Motion is based on this Notice of Motion; the Memorandum of Points and Authorities; the Declaration of Dylan Rudolph; all records and proceedings in this action; and such other and further matters as may be presented to the Court in connection with the hearing on the Motion.

Dated: May 9, 2025                                      MORGAN, LEWIS & BOCKIUS LLP

                                                        By *Dylan D. Rudolph*

                                                        Dylan D. Rudolph
                                                        *Attorney for Defendants*

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ............................................................................................................. 1

II.  RELEVANT FACTS ....................................................................................................... 2

    A.   Plaintiff Agreed To Arbitrate Counts III and IV...................................................... 2

    B.   Counts III And IV Fall Within The Scope Of The Agreement Because They Involve Plaintiff's Employment And Compensation..................................... 3

    C.   Plaintiff Refused To Stipulate To Arbitration........................................................... 4

III. ARGUMENT ................................................................................................................... 4

    A.   The FAA Governs The Agreement .......................................................................... 4

        1.   Plaintiff Agreed To A Valid Arbitration Agreement ................................... 5

            a.   The Agreement Is Not Procedurally Unconscionable...................... 6

            b.   The Agreement Is Not Substantively Unconscionable ................... 7

        2.   The Arbitration Agreement Covers Counts III And IV .............................. 9

    B.   The Court Should Stay the Lawsuit As To Counts III And IV ............................. 10

IV.  CONCLUSION .............................................................................................................. 10

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-i-

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO COMPEL ARBITRATION OF COUNTS III AND IV

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*24 Hour Fitness, Inc. v. Super. Ct.*,
   66 Cal. App. 4th 1199 (1998) .................................................................................................. 7

*Allied-Bruce Terminix Cos. Inc. v. Dobson*,
   513 U.S. (1995) ........................................................................................................................ 5

*Am. Exp. Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013) ................................................................................................................. 5

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
   24 Cal. 4th 83 (2000) ............................................................................................... 7, 8, 9, 10

*AT&T Mob. v. Concepcion*,
   563 U.S. 333 (2011) ................................................................................................................. 4

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 307 (2011) ........................................................................................................... 1, 11

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ................................................................................................. 5

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ............................................................................................. 1, 6

*Circuit City Stores, Inc. v. Najd*,
   294 F.3d 1104 (9th Cir. 2002) .............................................................................................. 7, 8

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003) ................................................................................................................... 5

*Craig v. Brown & Root, Inc.*,
   84 Cal. App. 4th 416 (2000) .................................................................................................... 6

*Davis v. Nordstrom, Inc.*,
   755 F.3d 1089 (9th Cir. 2014) ................................................................................................. 6

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ............................................................................................................. 4, 5

*Dotson v. Amgen, Inc.*,
   181 Cal. App. 4th 975 ............................................................................................................ 10

*Epic Systems Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) ............................................................................................................. 5

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991) ................................................................................................................... 7

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-ii-              DEFENDANTS' NOTICE OF MOTION AND MOTION TO
                  COMPEL ARBITRATION OF COUNTS III AND IV

*Graham v. Scissor-Tail, Inc.*,
   28 Cal. 3d 807 (1981) ............................................................................................................ 7

*Hoffman v. Citibank, N.A.*,
   546 F.3d 1078 (9th Cir. 2008) ................................................................................................ 6

*Jasso v. Money Mart Express, Inc.*,
   879 F. Supp. 2d 1038 (N.D. Cal. 2012) ................................................................................ 11

*Kim v. Tinder, Inc.*,
   2018 WL 6694923 (C.D. Cal. July 12, 2018) ........................................................................ 5

*Kinney v. United HealthCare Servs., Inc.*,
   70 Cal. App. 4th 1322 (1999) ................................................................................................. 8

*KPMG LLP v. Cocchi, et al.*,
   565 U.S. 18 (2011) ............................................................................................................... 11

*Lagatree v. Luce, et al.*,
   74 Cal. App. 4th 1105 (1999) ................................................................................................. 7

*Lane v. Francis Capital Mgmt. LLC*
   224 Cal. App. 4th 676 (2014) ................................................................................................. 9

*Marchese v. Shearson Hayden Stone, Inc.*,
   734 F. 2d 414 (9th Cir. 1984) ............................................................................................... 11

*Mission Viejo Emergency Med. Assocs. v. Beta Healthcare Grp.*,
   197 Cal. App. 4th 1146 (2011) ............................................................................................... 6

*Moncharsh v. Heily & Blase*,
   3 Cal. 4th 1 (1992) ................................................................................................................. 2

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ............................................................................................................. 5, 11

*Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev.*,
   55 Cal. 4th 223 (2012) ........................................................................................................ 7, 8

*Rodriguez v. American Tech., Inc.*,
   136 Cal. App. 4th 1110 (2006) ............................................................................................... 5

*Roman v. Super. Ct.*
   172 Cal. App. 4th 1462 (2009) ............................................................................................... 9

*Romero v. Watkins & Shepard Trucking, Inc.*,
   No. 20-55768, 2021 WL 3675074 (9th Cir. Aug. 19, 2021) .................................................. 6

*Sandquist v. Lebo Auto., Inc.*,
   1 Cal. 5th 233 (2016) ........................................................................................................... 11

*Serpa v. Cal. Surety Investigations, Inc.*,
   215 Cal. App. 4th 695 (2013) ................................................................................................. 8

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Smith v. Spizzirri,*
    601 U.S. 472 (2024) .................................................................................................. 12

*Totten v. Kellogg Brown & Root, LLC,*
    152 F. Supp. 3d 1243 (C.D. Cal. 2016) ........................................................................ 6

*U.S. v. Sutcliffe,*
    505 F.3d 944 (9th Cir. 2007) ........................................................................................ 5

*United States v. Trotter,*
    478 F.3d 918 (8th Cir. 2007) (per curiam) .................................................................. 5

**Statutes**

9 U.S.C. § 2 ........................................................................................................................ 4, 5, 6

9 U.S.C. § 3 ............................................................................................................................. 12

29 U.S.C. § 1132(a)(1)(B) ......................................................................................................... 1

29 U.S.C. § 1132(a)(3) .............................................................................................................. 1

29 U.S.C. § 1140 ....................................................................................................................... 1

Cal. Civ. Code § 1670.5 ............................................................................................................ 7

Code Civ. Proc. § 1281.2 .......................................................................................................... 2

ERISA ........................................................................................................................................ 3

Federal Arbitration Act .................................................................................................. 1, 4, 5, 6

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ..................................................................... 2, 4, 5

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- iv -   DEFENDANTS' NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION OF COUNTS III AND IV

## I. INTRODUCTION

Plaintiff Leslie Berland ("Plaintiff") filed this lawsuit against Defendants X Corp. (fka Twitter, Inc.) ("X Corp." or "Twitter"), X Holdings, Elon Musk, Lindsay Chapman, Dhruv Batura, Brian Bjelde, and the Twitter, Inc. Change of Control and Involuntary Termination Protection Policy (the "Plan") (collectively, "Defendants"), alleging four causes of action:

- **Count I** is a claim for Plan benefits under 29 U.S.C. § 1132(a)(1)(B);
- **Count II** is a claim for equitable relief under 29 U.S.C. § 1132(a)(3) based on an alleged violation of 29 U.S.C. § 1140;
- **Count III** is a claim for breach contract based on an alleged failure to pay Plaintiff equity compensation under a 2013 Equity Incentive Plan ("2013 Equity Plan"); and
- **Count IV** is a claim for breach of the Implied covenant of Good Faith and Fair Dealing based on the same alleged failure to pay certain equity awards under the 2013 Equity Plan.

Dkt. 1, ¶¶ 202-20. Plaintiff's Third and Fourth Causes of Action ("Counts III and IV"), for breach of contract and breach of the implied covenant of good faith and fair dealing, respectively, indisputably involve Plaintiff's compensation. *See, e.g.,* Dkt. 1 ("Twitter routinely granted her an annual equity award as part of her compensation package"). Plaintiff expressly agreed to arbitrate disputes related to her employment and compensation under the Dispute Resolution Agreement that she signed on February 1, 2016 ("Agreement"). So, Counts III and IV must be arbitrated.

The Agreement is expressly governed by the Federal Arbitration Act ("FAA"). The FAA reflects "a liberal federal policy favoring arbitration" requiring courts to enforce arbitration agreements according to their terms, especially where the parties seek to "achieve streamlined proceedings and expeditious results." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 307, 335-38 (2011); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The California Arbitration Act ("CAA") likewise requires the enforcement of arbitration agreements. *See* Code Civ. Proc. § 1281.2 ("[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party … to the agreement refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy …"); *Moncharsh v. Heily & Blase*, 3 Cal. 4th 1, 9 (1992).

Counts III and IV are, therefore, subject to arbitration under the Agreement, which is valid and enforceable. The Court should grant Defendants' Motion and stay further court proceedings related to Counts III and IV pending the resolution of the arbitration of those claims.

## II. RELEVANT FACTS

### A. Plaintiff Agreed To Arbitrate Counts III And IV

On or around January 21, 2016, Twitter hired Plaintiff as its Chief Marketing Officer. Declaration of Dylan Rudolph ("Rudolph Dec."), Ex. A, Offer Letter, p. 859.[1] Plaintiff's offer letter provided that, "[i]f a dispute should arise, it can be resolved through the Company's Dispute Resolution Agreement." *Id.* Plaintiff signed the Agreement on February 1, 2016. *Id.*, Ex. B. The Agreement sets forth the parties' agreement to arbitrate all claims related to Plaintiff's employment, including her compensation. *Id*. Specifically, in the Agreement, Plaintiff agreed that:

> This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* and evidences a transaction involving commerce. This Agreement applies to any dispute arising out of or related to Employee's employment with Twitter, Inc. or one of its affiliates, successor, subsidiaries or parent companies ("Company") or termination of employment and survives after the employment relationship terminates.
>
> \* \* \*
>
> Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or a forum other than arbitration. This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. Such disputes include without limitation disputes arising out of or relation to the interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement.
>
> \* \* \*
>
> Except as it otherwise provides, this Agreement also applies, without limitation, **to disputes regarding the employment relationship**, trade secrets, unfair competition, **compensation**, breaks and rest periods, termination, or harassment and claims arising out of … Employee Retirement Income Security Act (except claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance) … state statutes, if any, addressing the same or similar subject matters, and all other state statutory and common law claims.

*Id*., p. 241 (emphasis added).

---

[1] Exhibit page numbers refer to the Bates stamped numbers on the Exhibits attached to the Rudolph Dec., with the prefix "XBERLAND" and any zeros omitted.

1   The Agreement also contains a severability clause, which provides that "in the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable." *Id.*, p. 244.

**B.   Counts III And IV Fall Within The Scope Of The Agreement Because They Involve Plaintiff's Employment And Compensation**

On November 1, 2024, Plaintiff filed her Complaint in this lawsuit in the Northern District of California, asserting two claims under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") (Counts I and II) and, separately, claims for breach of contract and breach of the implied covenant of good faith and fair dealing (Counts III and IV, respectively). Dkt. 1, ¶¶ 202-20. This Motion does not involve Counts I and II.

Counts III and IV, however, involve equity compensation that Plaintiff claims she is owed under the 2013 Equity Plan (which is separate from the Severance Plan that forms the basis of Plaintiff's Counts I and II). *Id.*, ¶ 45. Regarding Counts III and IV, Plaintiff alleges that, "[o]ver the course of [her] employment, Twitter routinely granted her an annual equity award as part of her **compensation** package." *Id.* (emphasis added). And that Plaintiff "was entitled to [this] equity" but "upon her November 1, 2022 termination, Defendants failed and refused to pay [Plaintiff] the full cash value of her vested interests." *Id.* ¶ 46. Plaintiff further alleges that "Defendants breached their agreements with [Plaintiff] when they failed to pay [her] the cash equivalent of [the equity awards] when those rights vested on November 1, 2022," and "[b]y depriving [Plaintiff] of the benefits of the agreement which she earned … Defendants breached the covenant of good faith and fair dealing." *Id.*, ¶¶ 214, 219. Meaning, Counts III and IV are contract-based claims related to the enforcement of the 2013 Equity Plan (not the Severance Plan). *See id.*, ¶ 199 ("[i]n addition to the Plan benefits to which she is entitled, during her employment by Twitter, [Plaintiff] received equity awards in the form of both RSUs and PSUs.").

Under the Agreement, Plaintiff agreed to arbitrate Counts III and IV because those claims involve Plaintiff's employment relationship with Twitter and her compensation. *See* Rudolph Dec., Ex. B, p. 241 ("Agreement also applies, without limitation, to disputes regarding the employment relationship … [and] compensation").

### C. Plaintiff Refused To Stipulate To Arbitration

Before filing this motion, on May 2, 2025, Defendants' counsel spoke with Plaintiff's counsel over the telephone and requested that Plaintiff stipulate to arbitrate Counts III and IV. Rudolph Dec., ¶ 4. Plaintiff's counsel declined to stipulate to arbitration. *Id.*

## III. ARGUMENT

### A. The FAA Governs The Agreement

The FAA requires that Counts III and IV be arbitrated under the terms of the Agreement. *See* 9 U.S.C. § 2 ("[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . **shall** be valid, irrevocable and enforceable[.]") (emphasis added). The FAA establishes a national policy favoring arbitration where, as here, the parties contract for that mode of dispute resolution. *See* 9 U.S.C. § 1, *et seq*; *AT&T Mob. v. Concepcion*, 563 U.S. 333, 339 (2011); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219, (1985). The FAA creates a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (the FAA "reflects the overarching principle that arbitration is a matter of contract . . . [and that] courts must rigorously enforce arbitration agreements according to their terms . . . ") (citations and quotations omitted).

The Agreement has an express FAA choice-of-law provision, so it is governed by the FAA. Rudolph Dec., Ex. B, p. 241 ("[t]his Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* and evidences a transaction involving commerce"); *Kim v. Tinder, Inc.*, 2018 WL 6694923, at *2 (C.D. Cal. July 12, 2018) (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1129-1131 (9th Cir. 2015)); *Rodriguez v. American Tech., Inc.*, 136 Cal. App. 4th 1110, 1122 (2006)). And even if the Agreement did not expressly incorporate the FAA, the FAA would still apply because Twitter's business plainly "involve[es] commerce." *See* 9 U.S.C. § 2. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citing *Allied-Bruce Terminix Cos. Inc. v. Dobson*, 513 U.S., 265, 273-274 (1995). As the Ninth Circuit has explained, "the Internet is an instrumentality and channel of interstate commerce." *U.S. v. Sutcliffe*, 505 F.3d 944, 952-53 (9th Cir. 2007) (quoting

*United States v. Trotter*, 478 F.3d 918, 921 (8th Cir. 2007) (per curiam)). Arbitration agreements governed by the FAA "must be enforced as written." *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Byrd*, 470 U.S. at 218.

In deciding whether to compel arbitration under the FAA, the Court's role is limited to answering two questions: (1) does a valid agreement to arbitrate exist; and, if so, (2) does the arbitration agreement encompass the dispute or claims at issue? If the answer to both questions is "yes," then the Court must compel arbitration. *Ortho Diagnostic Sys., Inc.*, 207 F.3d at 1130.. Here, the answer to both inquiries is unequivocally "yes."

### 1.     Plaintiff Agreed To A Valid Arbitration Agreement

When determining whether a valid contract to arbitrate exists, courts apply ordinary state-law principles that govern contract formation. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014). "Under California law, a contract is valid if there is mutual assent between the parties and valid consideration." *Totten v. Kellogg Brown & Root, LLC*, 152 F. Supp. 3d 1243, 1250 (C.D. Cal. 2016). To start, Plaintiff signed the Agreement and, therefore, assented to its terms. Rudolph Dec., Ex. B, p. 244; *Romero v. Watkins & Shepard Trucking, Inc.*, No. 20-55768, 2021 WL 3675074, at *1 (9th Cir. Aug. 19, 2021) (finding parties formed agreement to arbitrate based on evidence that plaintiff signed arbitration agreement); *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 420 (2000) (an employee's acceptance of an agreement to arbitrate can be either express or implied in fact). Plaintiff cannot dispute that she agreed to the terms and conditions of the Agreement and, thereby, she is bound by the Agreement and must arbitrate Counts III and IV.

Likewise, the Agreement is valid and enforceable. Under the FAA, an arbitration agreement is enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Because Defendants have shown that an agreement to arbitrate exists and applies to the claims at issue, Plaintiff bears the burden of proving that the Agreement is not valid or enforceable. *Mission Viejo Emergency Med. Assocs. v. Beta Healthcare Grp.*, 197 Cal. App. 4th 1146, 1154 (2011).

A motion to compel arbitration may be denied only where a party proves a defense to enforcement of the agreement, such as unconscionability. *Hoffman v. Citibank, N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008). To establish a defense based on unconscionability, Plaintiff must show that the Agreement is *both* procedurally and substantively unconscionable. *See Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) ("[A]n agreement is unconscionable only if it is procedurally and substantively unconscionable."); *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev.*, 55 Cal. 4th 223, 235, 246 (2012); *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). Neither defense is met here.

### a. The Agreement Is Not Procedurally Unconscionable

Plaintiff's agreement to arbitrate was not procedurally unconscionable. Procedural unconscionability refers to "oppression" or "surprise" due to the unequal bargaining power that results in no real negotiation and an absence of meaningful choice. *Pinnacle*, 55 Cal. 4th at 246; *24 Hour Fitness, Inc. v. Super. Ct.*, 66 Cal. App. 4th 1199, 1213 (1998); Cal. Civ. Code § 1670.5. Procedural unconscionability may arise in connection with adhesion contracts, but the finding of an adhesion contract does not "per se" render the arbitration agreement unenforceable. *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 817-18 (1981) (such contracts are "an inevitable fact of life for all citizens businessman and consumer alike"). Further, the Supreme Court has recognized that "there often will be unequal bargaining power between employers and employees." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991). However, "[m]ere inequality in bargaining power" does not render an employee's arbitration agreement unenforceable. *Id.* Nor is a pre-dispute arbitration agreement invalid "merely because it is imposed as a condition of employment." *Lagatree v. Luce, et al.*, 74 Cal. App. 4th 1105, 1122-23 (1999) ("[U]nder *Gilmer*, the mandatory nature of an arbitration agreement does not, by itself, render the agreement unenforceable."). Moreover, many courts have held that employers may require employees to submit to arbitration as a condition of employment. *Id.* ("a predispute arbitration agreement is not invalid merely because it is imposed as a condition of employment").

Here, the Agreement includes a clear arbitration provision that provided Plaintiff with adequate notice that she was agreeing to abide by arbitration by signing the Agreement and

1  provided adequate details regarding the arbitration process in easily understandable terms. Rudolph
2  Dec., Ex. B.  The Agreement clearly put Plaintiff on notice of the arbitrability of Counts III and IV
3  because it broadly provided that "this Agreement also applies, without limitation, to disputes
4  regarding the employment relationship … [and] compensation." *Id.*, p. 241.  The Agreement is not
5  procedurally unconscionable.

### b. The Agreement Is Not Substantively Unconscionable

Even if Plaintiff could establish that the Agreement is procedurally unconscionable (she cannot), she would not be able to show that the Agreement is substantively unconscionable. *See Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) ("Under California law, an agreement is unconscionable only if it is [both] procedurally and substantively unconscionable"); *Serpa v. Cal. Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013) (when "there is no other indication of oppression or surprise, [and] the degree of procedural unconscionability of an adhesion agreement is low . . . the agreement will be enforceable unless the degree of substantive unconscionability is high").  Substantive unconscionability "focuses on the terms of the agreement and whether those terms are so one-sided as to shock the conscience." *Kinney v. United HealthCare Servs., Inc.*, 70 Cal. App. 4th 1322, 1330 (1999).  To render an arbitration agreement substantively unconscionable, "the term must be so one-sided as to shock the conscience." *Pinnacle*, 55 Cal. 4th at 246.

The California Supreme Court in *Armendariz* set forth criteria for assessing whether an agreement may be substantively unconscionable.  An arbitration agreement must provide for the following: (1) a neutral arbitrator, (2) adequate discovery, (3) a written award, (4) the availability of all the types of relief that would otherwise be available in court, (5) the employer's payment of any arbitration fees beyond the amount the employee would have to pay in court, and (6) include a "modicum of bilaterality." *Armendariz*, 24 Cal. 4th at 102-14, 117-18.

The Agreement lacks any of the characteristics that courts have found to be substantively unconscionable:

**First**, the Agreement provides that the arbitrator will be selected "by mutual agreement of the Company and the Employee." Rudolph Dec., Ex. B, p. 242.  If the parties cannot agree on an

1  arbitrator, then they may apply to a court of competent jurisdiction for appointment of a neutral
2  arbitrator. *Id.*

3  **Second**, the Agreement provides for discovery sufficient to vindicate Plaintiff's claims.
4  Arbitration agreements provide for adequate discovery where the parties "are at least entitled to
5  discovery sufficient to adequately arbitrate their statutory claims, including access to essential
6  documents and witnesses, as determined by the arbitrator(s)." *Armendariz*, 24 Cal. 4th at 106.
7  Here, the Agreement provides that "the parties will have the right to conduct adequate civil
8  discovery, bring dispositive motions, and present witnesses and evidence as needed to present their
9  cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator."  Rudolph
10 Dec., Ex. B, p. 242.[2]

11 **Third**, the Agreement expressly provides for a written decision and a statement of the
12 award.  *Id.*, p. 243. ("The Arbitrator will issue a decision or award in writing, stating the essential
13 findings of fact and conclusions of law.").

14 **Fourth**, the Agreement provides for all rights and remedies that the Parties would be
15 entitled to pursue in a court of law.  *Id.*, p. 242. ("The Arbitrator may award any party and any
16 remedy to which that party is entitled under applicable law.").

17 **Fifth**, the Agreement does not require Plaintiff to pay any unreasonable costs or fees, and
18 in fact requires X Corp. to pay all arbitration fees that California law requires it to pay. *See id.*, p.
19 243 ("Each party will pay for his, her or its own attorneys … However, in all cases where required
20 by law, the Company will pay the Arbitrator's and arbitration fees.").

21 **Sixth**, the Agreement is mutual, requiring that both Plaintiff and Defendants submit their
22 claims to arbitration.  *See* Rudolph Dec., Ex. B, p. 241, 243 ("This Agreement applies to any dispute
23 arising out of or related to Employee's employment with Twitter, Inc. … The parties will arbitrate
24 their dispute before the Arbitrator, who shall confer with the parties regarding the conduct of the

---

[2] *See also Lane v. Francis Capital Mgmt. LLC* 224 Cal. App. 4th 676, 693 (2014) (holding that "by agreeing to arbitrate statutory claims, the employer impliedly agreed to all discovery necessary to adequately arbitrate the claims"); *Roman v. Super. Ct.* 172 Cal. App. 4th 1462, 1476 (2009) ("There appears to be no meaningful difference between the scope of discovery approved in *Armendariz* and that authorized by the AAA employment dispute rules").

hearing and resolve any disputes the parties may have in that regard."). Thus, the Agreement is binding on Defendants and Plaintiff, thereby satisfying the final *Armendariz* requirement of a "modicum of bilaterality." 24 Cal. 4th at 111-12.

Because the Agreement is neither procedurally nor substantively unconscionable, it is valid, binding, and enforceable.[3]

### 2. The Arbitration Agreement Covers Counts III And IV

The scope of matters covered by the Agreement are determined under the Agreement's terms. *Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 247 (2016) (noting that state law follows federal law). A claim is subject to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Marchese v. Shearson Hayden Stone, Inc.*, 734 F. 2d 414, 419 (9th Cir. 1984). "[U]nder *Concepcion*, arbitration agreements will be enforced *in all but the most limited of circumstances*." *Jasso v. Money Mart Express, Inc.*, 879 F. Supp. 2d 1038, 1045 (N.D. Cal. 2012) (emphasis added). And "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *KPMG LLP v. Cocchi, et al.*, 565 U.S. 18, 19 (2011).

Counts III and IV are employment-related claims that fall squarely within the scope of the Agreement. As noted, Counts III and IV seek recovery of compensation under the 2013 Equity Plan. *Id.*, ¶ 45. Specifically, Plaintiff alleges that the basis of Counts III and IV is the recovery of equity compensation that "Twitter routinely granted her an annual equity award as part of her

---

[3] Even if the Court were to find a portion of the Agreement unconscionable, the terms provide that "in the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable." Rudolph Dec., Ex. B, p. 244. This severability clause is consistent with "the strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement[.]" *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, pls check if we need to add 985 here 986 (2010) (internal quotation omitted) (noting that refusal to enforce an arbitration agreement is proper only where the agreement is "permeated" by unconscionability). Courts must consider whether the "interests of justice would be furthered by severance" and should save and enforce an agreement wherever possible through severance. *See id*. at 985-86 (internal quotation omitted) (holding that trial court abused its discretion in not reforming agreement pursuant to severance clause where provision could "easily be severed without affecting the remainder of the agreement").

compensation package." *Id.* Plaintiff further alleges that "Defendants breached their agreements with [Plaintiff] when they failed to pay [her] the cash equivalent of [the equity awards] when those rights vested on November 1, 2022," and "[b]y depriving [Plaintiff] of the benefits of the agreement which she earned … Defendants breached the covenant of good faith and fair dealing." *Id.*, ¶¶ 214, 219.

This dispute involving Plaintiff's equity compensation falls squarely within the scope of the Agreement, which applies "without limitation, to disputes regarding the employment relationship … compensation … and claims arising under the … Employee Retirement Income Security Act (except for claims for employee benefits under the benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance)." Rudolph Dec., Ex. B, p. 241. There is, therefore, no question that Counts III and IV fall squarely within the scope of the Agreement.

### B.  The Court Should Stay the Lawsuit As To Counts III And IV

Because the Agreement is enforceable and encompasses Counts III and IV against Defendants, the Court should compel arbitration and stay the lawsuit as it relates to Counts III and IV pending the resolution of the arbitration of those claims. *See* 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, §3 of the FAA **compels** the court to stay the proceeding.") (emphasis added).

### IV.  CONCLUSION

For the foregoing reasons, the Court should enforce the Agreement and order Plaintiff to arbitrate Counts III and IV and stay this action as it relates to Counts III and IV pending the resolution of the arbitration.

Dated: May 9, 2025                           MORGAN, LEWIS & BOCKIUS LLP

                                             By  /s/ Dylan D. Rudolph
                                                 Dylan Rudolph
                                                 *Attorneys for Defendants*