# Exhibit A

Nathan E. Denning (admitted *pro hac vice*)
Michael L. Kenny Jr. (admitted *pro hac vice*)
Daniel J. LaRose (admitted *pro hac vice*)
Gabriella E. Bensur (admitted *pro hac vice*)
WIGGIN AND DANA LLP
437 Madison Avenue, 35th Floor
New York, New York 10022
Telephone: (212) 551-2600
ndenning@wiggin.com
mkenny@wiggin.com
dlarose@wiggin.com
gbensur@wiggin.com

Teresa S. Renaker, Cal. Bar No. 187800
Kirsten G. Scott, Cal Bar. No. 253464
RENAKER SCOTT LLP
505 Montgomery St., Suite 1125
San Francisco, CA 94111
Telephone: (415) 653-1733
teresa@renakerscott.com
kirsten@renakerscott.com

*Attorneys for Plaintiff Leslie Berland*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| LESLIE BERLAND,<br><br>Plaintiff,<br><br>vs.<br><br>X CORP., f/k/a TWITTER, INC., X HOLDINGS, ELON MUSK, LINDSAY CHAPMAN, DHRUV BATURA, BRIAN BJELDE, and TWITTER, INC. CHANGE OF CONTROL AND INVOLUNTARY TERMINATION PROTECTION POLICY,<br><br>Defendants. | Case No. 24-cv-07589<br><br>**PLAINTIFF'S [PROPOSED] SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S THIRD AND FOURTH CAUSES OF ACTION**<br><br>Date: June 26, 2025<br>Time: 10:00 a.m.<br>Place: Courtroom 8, 19th Floor<br>Judge: Hon. Jacqueline Scott Corley |

Defendants bore the burden of establishing that the series of agreements between the parties ultimately resulted in an agreement to arbitrate claims arising under the five at-issue Award Agreements. *See Suski v. Marden-Kane, Inc.*, No. 21-CV-04539-SK, 2022 WL 103541, at *4 (N.D. Cal. Jan. 11, 2022), *aff'd sub nom. Suski v. Coinbase, Inc.*, 55 F.4th 1227, *aff'd*, 602 U.S. 143. Defendants first tried to carry their burden by relying exclusively on the 2016 Dispute Resolution Agreement (the "DRA"), without relying on (or even mentioning) the terms of the Award Agreements themselves. Plaintiff then showed that the earlier-in-time DRA (which provides for arbitration) is not applicable to claims arising under the later-in-time Award Agreements (which are fully integrated, do not provide for arbitration, and contain a venue provision designating California courts as the forum for litigation). (Opp. at 10-17.) Now seeing that the chronology of agreements is against them, Defendants belatedly use their Reply to try to create an alternate timeline—one in which the parties' agreement to the California venue provision supposedly "***predated*** Plaintiff's execution of the [DRA]" in February 2016. (Reply at 4 (emphasis in original).) In this alternate timeline, the parties agreed to the California venue provision when Plaintiff signed her Offer Letter in January 2016 because, Defendants' argument goes, the Offer Letter incorporated the 2013 Equity Incentive Plan, which, according to Defendants, "includes the very venue provision at issue here". (*Id.* at 3; *see also id.* at 3-4 (asserting that the Plan "contain[ed]" the California venue provision).) Accordingly, Defendants now argue, the California venue provisions in the Award Agreements must be read together with (or were somehow superseded by) the February 2016 DRA. (*Id.* at 2-5.) The problem with this new argument is that it isn't true: The 2013 Equity Incentive Plan does not contain the California venue provision, and so Defendants' alternate timeline falls apart.

The 2013 Equity Incentive Plan is set forth at pages 1 through 18 of ECF No. 1-4. ***It contains no venue or other dispute-resolution provisions***. (*See* ECF No. 1-4 at 1-18.) The California venue "provision" Defendants cite as having "always existed in the 2013 Plan" (Reply at 4), in fact comes from one of the ***template*** "form agreements" that were initially prepared ***for potential future use*** when issuing awards.[1] These "form agreements" were nothing more than

---
[1] *See* Bensur Decl. (Ex. B Twitter, Inc, Amendment No. 2 to Form S-1 Registration Statement,

unexecuted *draft* contracts, and, contrary to Defendants' argument, the "provisions" in those draft contracts are *not* part of the 2013 Equity Incentive Plan and are *not* binding upon anybody, including the Plan Administrator.

It is easy, if one looks, to find proof that the 2013 "form agreements" are not part of the 2013 Equity Incentive Plan itself and, thus, that the "provisions" of those form agreements are not terms of the Plan. *First*, Twitter's SEC filing disclosing the Plan distinguishes between the Plan itself, on the one hand, and any "related" form agreements, on the other. (*See* Bensur Decl. Ex. B at 232 ("Description" of Exhibit 10.2 is "Twitter, Inc. 2013 Equity Incentive Plan *and related form agreements*." (emphasis added)).)[2]  *Second*, the Plan itself does not specify any particular form of agreement; to the contrary, it expressly provides that the Plan Administrator has the power "to approve forms of Award Agreements for use under the Plan." (ECF No. 1-4 at 7.)  *Third*, the unexecuted draft nature of the 2013 "form agreements" is apparent from the face of those documents, which include *blanks* that must be completed in connection with any award and also include *unexecuted signature lines* for both the company and the participant:

```
NOTICE OF RESTRICTED STOCK UNIT GRANT
    Participant Name:
    Address:

    Participant has been granted the right to receive an Award of Restricted Stock Units, subject to the terms and conditions of the Plan
    and this Award Agreement, as follows:

        Grant Number                    _____
        Date of Grant                   _____
        Vesting Commencement Date       _____
        Number of Restricted Stock Units _____
```

```
PARTICIPANT:                              TWITTER, INC.

_____              _____
Signature                                 By

_____              _____
Print Name                                Title
```

---

Oct. 22, 2013, https://www.sec.gov/Archives/edgar/data/1418091/000119312513406804/d564001ds1a.htm) at 232 (describing these templates as "form agreements" that are "related" to the Plan); *see* ECF No. 1-4 at 7 (noting existence of "forms of Award Agreements for use under the Plan").

[2] Both Plaintiff and Defendants have relied on Exhibit 10.2 to this SEC Filing. (*See* ECF Nos. 1-4, 59-2.) Exhibit 10.2 includes both the 2013 Equity Incentive Plan and the form agreements.

(*Id.* at 46-47.) *Fourth*, the 2013 form agreements unambiguously treat the 2013 Equity Incentive Plan as a separate document. (*See, e.g.*, *id.* at 46-47 (referring to the 2013 Equity Incentive Plan separately), 48 (referring to "this Award Agreement" and "the Plan" separately).) Perhaps most obviously, a provision in the 2013 form agreements, entitled "Award Agreement Governs," provides that, "In the event of a conflict between one or more provisions of this Award Agreement and one or more provisions of the Plan, the provisions of the Award Agreement will govern." (*Id.* at 55.) *Fifth*, consistent with the Plan Administrator's power to decide on the form of any award agreement, the Plan Administrator ***did not use the 2013 form agreements when issuing the five Award Agreements at issue in this case***; each of the Award Agreements at issue has differences from the form agreements that were prepared in 2013. (*See, e.g.*, Exs. 1 and 2 (additional language in "Responsibility for Taxes" and not including an appendix); Exs. 3-5 (including a different appendix).)³ It is simply incorrect to assert, as Defendants now have, that the 2013 form agreements constitute ***any*** agreement of the parties, much less an agreement of the parties with respect to awards issued years later using different forms of agreement.

Because the California venue provision was not a term of the 2013 Equity Incentive Plan, that provision applies to the five awards at issue here solely by virtue of its inclusion in the Award Agreements dated between 2018 and 2022. Because each of those Award Agreements is fully integrated, does not provide for arbitration, and post-dates the DRA by years, Defendants are wrong when they argue that the Award Agreements and DRA "are properly read 'harmoniously' to provide that any disputes concerning Plaintiff's employment or compensation are subject to binding arbitration." (Reply at 3.) *Compare Suski v. Coinbase, Inc.*, 55 F.4th at 1231 (principle of reading contractual language "harmoniously" does not apply to "situations involving multiple contracts"), *with Ma v. Golden State Renaissance Ventures, LLC*, 2021 WL 2190912 (N.D. Cal. May 31, 2021) (interpreting two contracts together to ensure that they worked "together harmoniously" where they expressly incorporated one another and were executed at

---

³ Citations of the form "Ex. #" are to the Exhibits to the Declaration of Nathan E. Denning in Support of Plaintiff's Opposition to Defendants' Motion to Compel Arbitration of Plaintiff's Third and Fourth Causes of Action, at ECF No. 58-1.

1  approximately the same time).  For these additional reasons, Defendants' motion must be denied.[4]

2

3  Dated: June 9, 2025                    Respectfully submitted,

4

5                                         By:    */s/ Gabriella E. Bensur*_____

6
                                                 RENAKER SCOTT LLP
7                                                Kirsten G. Scott
                                                 Teresa R. Renaker
8
                                                 WIGGIN AND DANA LLP
9                                                Nathan E. Denning (admitted *pro hac vice*)
                                                 Michael L. Kenny Jr. (admitted *pro hac vice*)
10
                                                 Daniel J. LaRose (admitted *pro hac vice*)
11                                               Gabriella E. Bensur (admitted *pro hac vice*)

12
                                                 *Attorneys for Plaintiff Leslie Berland*
13

14

15

16

17

18

19

20

21

22

23

24

25

---

26  [4] This Sur-Reply is respectfully submitted for the limited purpose of correcting Defendants' belated misstatement regarding the 2013 Equity Incentive Plan and related form agreements.
27  Plaintiff looks forward to responding to Defendants' other misplaced contentions at oral argument.
28