UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE BERLAND,<br><br>    Plaintiff,<br><br>v.<br><br>X CORP., SUCCESSOR IN INTEREST TO TWITTER, INC., et al.,<br><br>    Defendants. | Case No. 24-cv-07589-JSC<br><br>**ORDER RE DEFENDANTS' MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S THIRD AND FOURTH CAUSES OF ACTION**<br><br>**Re: Dkt. Nos. 56, 62** |

Leslie Berland seeks to recover employment benefits she alleges Defendants withheld after Elon Musk acquired Twitter in 2022. (Dkt. No. 26.)[1] Before the Court is Defendants' motion to compel to arbitration Ms. Berland's third cause of action for breach of contract and her fourth cause of action for breach of the implied covenant of good faith and fair dealing. (Dkt. No. 56.) After carefully considering the parties' written submissions, and having had the benefit of oral argument on July 24, 2025, the Court DENIES Defendants' motion.

## DISCUSSION

### A. The Agreements

Ms. Berland's third and fourth causes of action allege breach of Award Agreements issued in 2018, 2019, 2020, 2021, and 2022 (Dkt. Nos. 58-2, 58-3, 58-4, 58-5, 58-6) pursuant to a 2013 Equity Plan. Defendants move to compel arbitration of those causes of action based upon a February 1, 2016 Dispute Resolution Agreement ("Dispute Resolution Agreement") (Dkt. No. 56-3).

//

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

### 1. The Award Agreement and 2013 Equity Plan

The Award Agreements each state they are "governed by the terms and conditions of the [2013 Equity] Plan and this Agreement, including the Terms and Restricted Stock Unit Grant, attached hereto as Exhibit A, all of which are made a part of this document." (*See, e.g.,* Dkt. No. 58-2 at 3.) They include a governing law and venue provision:

> This Award Agreement will be governed by the laws of Delaware without giving effect to the conflict of law principles thereof. ***For purposes of litigating any dispute that arises under this Award*** of Restricted Stock Units or this Award Agreement, the parties hereby submit to and consent to the jurisdiction of the State of California, and agree that ***such litigation will be conducted in the courts of the County of San Francisco, California, or the federal courts for the United States for the Northern District of California, and no other courts,*** where this Award of Restricted Stock Units is made and/or to be performed.

(Dkt. Nos. 58-2 ¶ 24; 58-3 ¶ 24; 58-4 ¶ 24; 58-5 ¶ 24; 58-6 ¶ 24 (emphasis added).) Each also specifies that the 2013 Equity Incentive Plan and each individual Award Agreement "constitutes the entire understanding of the parties on the subjects covered." (Dkt. Nos. 58-2 ¶ 26; 58-3 ¶ 26; 58-4 ¶ 26; 58-5 ¶ 26; 58-6 ¶ 26.)

The 2013 Equity Plan includes a nearly identical governing law and venue provision:

> This Agreement will be governed by the laws of Delaware, without giving effect to the conflict of law principles thereof. For purposes of litigating any dispute that arises under this Option or this Agreement, the parties hereby submit to and consent to the jurisdiction of the State of California, and agree that such litigation will be conducted in the courts of the County of San Francisco, California, or the federal courts for the United States for the Northern District of California, and no other courts, where this Option is made and/or to be performed.

(Dkt. No. 26-3 at 31.)

### 2. The Offer Letter and Dispute Resolution Agreement

Ms. Berland signed her Offer Letter on January 21, 2016. (Dkt. No. 56-2.) The Letter provides: "If a dispute should arise, it can be resolved through the Company's Dispute Resolution Agreement, which is attached for your signature." (*Id.* at 5.) But, it explicitly carves out disputes arising from the Severance Policy, which is governed by ERISA. (*Id.*) The Offer Letter also states: "The RSUs, Options and PRSUs will be subject to the terms and conditions set forth in the Company's 2013 equity plan and the applicable RSU, Option and PRSU award agreements." (*Id.*

2

at 4. ) The Letter provides it

> along with the Confidentiality Agreement and the documents governing the equity award(s) described herein, supersede and replace any prior agreements, representations or understandings, whether written, oral or implied, between you and the Company relating to the subject matters described herein. This Agreement may not be amended or modified, except by an express written agreement signed by both you and a duly authorized officer of the Company.

(*Id.* at 5.)

The Dispute Resolution Agreement, which Ms. Berland signed on February 1, 2016, provides:

> This Agreement applies to any dispute arising out of or related to Employee's employment with Twitter, Inc. or one of its affiliates, successor, subsidiaries or parent companies ("Company") or termination of employment … .
>
> Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. …
>
> Except as it otherwise provides, this Agreement also applies, without limitation, to disputes regarding the employment relationship, trade secrets, unfair competition, compensation, … Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), … and state statutes, if any, addressing the same or similar subject matters, and all other state statutory and common law claims.

(Dkt. no. 56-3 at 2.) The Dispute Resolution Agreement specifies an arbitrator is to decide "disputes arising out of or relating to interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement." (*Id.*) Finally, the Dispute Resolution Agreement states "it is the full and complete agreement relating to the formal resolution of employment-related disputes." (*Id.* at 5.)

## ANALYSIS

The Federal Arbitration Act (FAA) governs arbitration agreements "evidencing a transaction involving commerce." 9 U.S.C. § 2. Such agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id*. In resolving a motion to compel arbitration under the FAA, a court's inquiry is

3

limited to two "gateway" issues: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If both conditions are met, the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (internal quotation marks and citations removed). So, the FAA "requires courts to rigorously enforce agreements to arbitrate." *Johnson v. Walmart, Inc.*, 57 F.4th 677, 681 (9th Cir. 2023). But, while "'doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made.'" *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 743 (9th Cir. 2014) (quoting *Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011)).

Although the Award Agreements unambiguously provide "any dispute" that arises under the Agreements shall be litigated in California state or federal court, Defendants insist the Dispute Resolution Agreement mandates arbitration of these claims.

### A. The Court Decides Which Agreement Governs

When "parties have agreed to *two* contracts—one sending arbitrability disputes to arbitration, and the other either explicitly or implicitly sending arbitrability disputes to the courts—a court must decide which contract governs." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 152 (2024) ("*Coinbase III*"). Because the issue of whether a subsequent contract supersedes a prior contract goes to "the existence rather than scope of an arbitration agreement," such issue is "for the court to decide." *Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1230 (9th Cir. 2022) ("*Coinbase II*"), *aff'd,* 602 U.S. 143 (2024). And "state-law principles of contract formation and interpretation" determine whether an agreement to arbitrate exists. *Id.*

### B. The Award Agreements Govern Venue

"A contract containing a forum selection clause supersedes an arbitration agreement where the forum selection clause[ ] ... sufficiently demonstrate[s] the parties' intent to do so." *Id.* at 1230 (cleaned up). The general rule under California law "is that when parties enter into a second contract dealing with the same subject matter as their first contract without stating whether the second contract operates to discharge or substitute for the first contract, the two contracts must be

4

1  interpreted together and the latter contract prevails to the extent they are inconsistent." *Id.*
2  (cleaned up).

### 1. Whether the Contracts are Inconsistent

The parties entered each Award Agreement after the Dispute Resolution Agreement. The Award Agreements provide that "[f]or the purposes of litigating any dispute that arises under" these contracts, the parties "submit to and consent to the jurisdiction of the State of California, and agree that such litigation will be conducted" in San Francisco state court or the Northern District of California court in San Francisco. (Dkt. Nos. 58-2 ¶ 24; 58-3 ¶ 24; 58-4 ¶ 24; 58-5 ¶ 24; 58-6 ¶ 24.) They also each specify that said contracts "constitute[] the entire understanding of the parties *on the subjects covered*." (*See, e.g.*, Dkt. No. 58-2 at 14 (emphasis added).) By contrast, the earlier-entered Dispute Resolution Agreement provides it "applies to any dispute arising out of or related to Employee's employment with Twitter." (Dkt. No. 56-3 at 2.) The Award Agreements and Dispute Resolution Agreement are therefore inconsistent: the Award Agreements unambiguously provide that "any dispute" arising under the Agreements shall be litigated in court whereas the Dispute Resolution Agreement provides that any employment-related dispute, which could include a dispute under the Award Agreements, shall be arbitrated. Under California law, the latter contracts—the Award Agreements—prevail.[2] And so Defendants have not met their burden of proving by a preponderance of the evidence an applicable arbitration agreement exists. *See Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (holding the party moving to compel arbitration bears the burden of proving the existence of an agreement to arbitrate).

*Suski v. Coinbase*—which Defendants did not even acknowledge in their motion to compel—is dispositive. There, the first agreement stated "any dispute arising under this Agreement shall be finally settled in binding arbitration" and "any dispute arising out of or

---

[2] The Award Agreements state they shall be governed by Delaware law. (Dkt. Nos. 58-2 ¶ 24; 58-3 ¶ 24; 58-4 ¶ 24; 58-5 ¶ 24; 58-6 ¶ 24.) Defendants nonetheless cite only California law in support of their motion to compel arbitration. Ms. Berland's opposition cites both California and Delaware law. Since Defendants rely solely on California law, and Plaintiff urged at oral argument that Delaware law is more favorable to its position but only needs to be considered insofar as the Court is inclined to compel arbitration, the Court applies California law.

relating to this Agreement or the Coinbase Services, … , shall be resolved through binding arbitration." *Suski v. Marden-Kane, Inc.*, No. 21-cv-04539-SK, 2022 WL 103541, at *1 (N.D. Cal. Jan. 11, 2022) ("*Coinbase I*"), *aff'd sub nom. Suski v. Coinbase, Inc.*, 55 F.4th 1227 (9th Cir. 2022), *aff'd,* 602 U.S. 143 (2024). Some of Coinbase's users subject to the first agreement subsequently entered a Coinbase cryptocurrency sweepstakes which included terms and conditions with the following "forum selection clause": "THE CALIFORNIA COURTS (STATE AND FEDERAL) SHALL HAVE SOLE JURISDICTION OF ANY CONTROVERSIES REGARDING THE PROMOTION." *Id.* at *3. The Ninth Circuit held the subsequent sweepstakes agreement's forum selection clause "evince[d] the parties' intent not to be governed by the" first agreement even though the sweepstakes agreement did not contain language revoking the arbitration agreement in the first agreement. *Suski (Coinbase II),* 55 F.4th at 1231.

Like the promotion contracts in *Suski*, the Award Agreements were all entered after the Dispute Resolution Agreement. Also like *Suski*, the specific venue provision in the Award Agreements requiring litigation in court evinces the parties' intent not to be governed by the Dispute Resolution Agreement. But, unlike *Suski*, the Award Agreements also contain an integration clause which states the Award Agreements "constitute[] the entire understanding of the parties *on the subjects covered*." (Dkt. No. 58-2 at 14 (emphasis added).) This language at least implicitly if not explicitly revokes the Dispute Resolution Agreement as to the subjects covered under the Award Agreements, although under California law such revocation is not required for the latter contract to govern.

Defendants' attempt to distinguish *Suski* is unavailing. They argue the Award Agreements' venue clause only applies if the dispute would not otherwise be governed by the Dispute Resolution Agreement. But, Defendants' interpretation asks the Court to ignore the plain meaning of the subsequently-entered Award Agreement venue clause: all "litigation" involving "any dispute" under the Award Agreements shall be litigated in court. And, the Award Agreement constitutes the "entire understanding" of the parties on the subjects covered by the Award Agreement, which includes the litigation of "any dispute" under the Award Agreements. *See* Cal. Civ. Code § 1644 ("The words of a contract are to be understood in their ordinary and popular

6

sense"). Further, if "any dispute" means any dispute not otherwise covered by the Dispute Resolution Agreement as Defendants' urge, then what is left to apply to the Award Agreements venue provision? At oral argument all Defendants could come up with is litigation to confirm arbitration awards. Such a cramped interpretation of the broad language of the subsequently-entered Award Agreements is inconsistent with California law.

Defendants' heavy reliance on *Ma v. Golden State Renaissance Ventures, LLC*, No. 21-cv-00856-WHO, 2021 WL 2190912, at *7 (N.D. Cal. May 31, 2021) is misplaced. First, *Ma* was decided before *Suski* and did not apply the California law regarding subsequent contracts as set forth in *Suski*; indeed, *Ma* does not engage in any temporal analysis. Second, the *Ma* venue clause merely stated that all litigation must be in court, *id.* at *7, not that "all disputes" under the agreement must be litigated in court. Here, by contrast, the venue provision requires "any dispute" under the Agreement be litigated in court and thus is inconsistent with the Dispute Resolution Agreement providing for "any dispute" being resolved in arbitration. Third, the *Ma* court held its interpretation was necessary to harmonize the two agreements citing California law requiring "[s]everal documents concerning the same subject and made as part of the same transaction will be construed together even if the documents were not executed contemporaneously." *Myers Bldg. Indus., Ltd. v. Interface Tech., Inc.*, 13 Cal. App. 4th 949, 967 (1993), *as modified on denial of reh'g* (Mar. 26, 1993); *id.* at *7 (citing *Myers*). But the years-later issued Award Agreements are not part of the same transaction as the Dispute Resolution Agreement, even if the Dispute Resolution Agreement is construed as part of the original employment-offer transaction. And, the Dispute Resolution Agreement does not specifically address the same subject as the Award Agreements.

At oral argument Defendants relied on *Roma Mikha Inc. v. So. Glazer's Wine & Spirits, LLC*, cited briefly in their reply, where the court held forum selection clauses in contracts that ***also contained arbitration clauses within them*** did not foreclose that the parties entered into valid arbitration agreements because "the forum-selection provisions apply '*if* the parties litigate, not that litigation is required.'" *Roma Mikha, Inc. v. S. Glazer's Wine & Spirits, LLC*, No. 22-cv-01187-FWS-ADS, 2023 WL 3150076, at *6 (C.D. Cal. Mar. 30, 2023), *reconsideration denied*,

7

1  No. 22-cv-01187-FWS-ADS, 2024 WL 5372754 (C.D. Cal. Nov. 21, 2024) (quoting *Hedden v. Z
2  Oldco, LLC*, 301 So.3d 1034, 1039 n.1 (Fla. Dist. Ct. App. 2019)).  *Roma* did not involve a
3  subsequent contract with a court-only litigation provision; instead, the same contract contained
4  both an arbitration provision with broad language and a forum selection clause with somewhat
5  more limited language.  *Id.*  Here, in contrast, the arbitration agreement was entered into years
6  before the agreements requiring litigation of a narrow set of disputes in court.  So, this case falls
7  under *Suski*, which *Roma* did not apply because it did not involve a subsequent contract.  *Id.*

        Finally, Defendants' argument that California courts regularly hold integration clauses do not negate arbitration agreements is unpersuasive because none of Defendants' cited cases include an integration clause *and* a dispute resolution clause.  *Guaranteed Rate, Inc. v. Faust*, No. 24-cv-00434-W-DEB, 2024 WL 4246086, at *4 (S.D. Cal. Sept. 19, 2024) (holding the underlying contract "is limited to 'the subject matter hereof,' and it is silent on dispute resolution"); *Jenks v. DLA Piper Rudnick Gray Cary US LLP*, 243 Cal. App. 4th 1, 15-16 (2015) (holding the subsequent termination agreement was also silent as to dispute resolution); *Oxford Preparatory Acad. v. Edlighten Learning Sols.*, 34 Cal. App. 5th 605, 612 (2019) (similarly holding a subsequent agreement that was silent on dispute resolution did not supersede the prior arbitration agreement); *see also Cione v. Foresters Equity Servs., Inc.*, 58 Cal. App. 4th 625 (1997) (cited as the "leading case" on the subject by *Jenks*, where the subsequent agreement was also silent on dispute resolution).

        So, because the Award Agreements' venue provision supersedes the Dispute Resolution Agreement for "any dispute" arising under the Award Agreements, and that provision requires litigation in this Court, the Court DENIES Defendants' motion to compel arbitration of the third and fourth causes of action.

## CONCLUSION

        Because the Award Agreements' venue provision applies to Ms. Berland's claims arising under the Award Agreements, Defendants' motion to compel arbitration is DENIED.  A further case management conference is set for August 27, 2025 at 2:00 p.m. via Zoom video, with an updated joint case management statement to be filed a week in advance.

8

This Order disposes of Docket Nos. 56 and 62.

**IT IS SO ORDERED.**

Dated: July 25, 2025

JACQUELINE SCOTT CORLEY
United States District Judge